DAVID ZAPATA SAAVEDRA ET AL., recurridos, *v.* ALFREDO ZAPATA MARTÍNEZ ET AL., peticionarios.

*Número:* AC-2000-42 *Resuelto:* 20 de febrero de 2002

280

*Milton D. Roque García* y *Aurelio Roque Delgado*, abogados de la parte peticionaria; *Carmen Amparo Ríos Rivera*, abogada de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

## I

La menor L.C.O. (en adelante la menor) nació el 6 de julio de 1983 en Fajardo, Puerto Rico, siendo sus padres Ana María Olmedo Padilla y Fernando Castro Nieves (en adelante los padres biológicos). Debido a la incapacidad de la madre y la imposibilidad del padre para cuidar de la menor por causa de su adicción a las drogas, a los seis meses de nacida la madre decidió entregar la niña a su prima María Rosa Irizarry Rivera (en adelante la madre adoptante) y al esposo de ésta, David Zapata Saavedra (en adelante el padre adoptante), para que éstos se hicieran cargo del cuidado de la menor.

Transcurrido poco más de cuatro años, el 23 de abril de 1998 el matrimonio Zapata Irizarry presentó una petición de adopción ante el Tribunal de Primera Instancia, Sala

Superior de San Juan (en adelante el TPI). Durante la tramitación de la adopción, el padre adoptante estuvo padeciendo de una afección cardiaca, diabetes y apnea. No obstante, a pesar de sus limitaciones físicas, consintió en adoptar a la menor. Asimismo, mediante escrito intitulado Comparecencia Especial, el 15 de mayo de 1998 la madre biológica de la niña consintió a la adopción.

Luego de varios trámites, el TPI señaló la celebración de una vista para el 17 de septiembre de 1998. En la madrugada de ese día, el padre adoptante murió, razón por la cual no se celebró la vista.

Así las cosas, el 29 de octubre de 1998 la madre adoptante solicitó al TPI que notificara sobre el procedimiento de adopción a los padres del finado, Alfredo Zapata Martínez y Carmen Ellit Saavedra del Toro (en adelante los peticionarios). Los peticionarios comparecieron y solicitaron intervenir como partes en el procedimiento de adopción, amparándose en la Regla 21.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, por alegadamente ser éstos herederos forzosos del padre adoptante. Además, los peticionarios se opusieron a la adopción al alegar que su hijo les había manifestado no querer adoptar a la menor.

Oportunamente, la madre adoptante se opuso a la solicitud de intervención presentada por los peticionarios. Adujo que, conforme a la Ley Núm. 9 de 19 de enero de 1995 (en adelante la Ley de Adopción), 32 L.P.R.A. sec. 2699 *et seq.*, los peticionarios tenían derecho a ser oídos a los fines de establecer que el finado había desistido de su consentimiento a la adopción, mas no tenían derecho a intervenir como parte en el procedimiento. Entendió la madre adoptante que la regla de Procedimiento Civil citada por los peticionarios no era de aplicación, ya que la Ley de Adopción es una ley especial que limita la comparecencia de las partes a los fines antes señalados.

En cuanto a la oposición de los peticionarios a la adopción por razón del alegado desistimiento del padre adop-

tante, la madre adoptante negó dichos planteamientos. Para sustentar sus alegaciones, anejó copia de la declaración jurada del Dr. Miguel A. López Napoleoni. En síntesis, éste declaró que el padre adoptante fue su paciente desde el 31 de enero de 1998 hasta su fallecimiento el 17 de septiembre de 1998. Además, expuso que el 14 de septiembre de 1998 y el 16 de septiembre de 1998 el padre adoptante le expresó su interés en asistir a la vista de adopción que habría de celebrarse el 17 de septiembre de 1998.[1]

Examinados los escritos presentados por los peticionarios y las oposiciones a éstos, mediante Resolución de 18 de mayo de 1999 el TPI limitó la intervención de los peticionarios conforme a lo expuesto en el Art. 16 de la Ley de Adopción, 32 L.P.R.A. sec. 2699o, y determinó que dicha disposición no viola precepto constitucional alguno. Además, ordenó citar a los peticionarios para la vista señalada para el 24 de junio de 1999.

No conforme con las determinaciones del TPI, el 21 de junio de 1999 los peticionarios acudieron ante el Tribunal de Circuito de Apelaciones (en adelante el TCA). Solicitaron que se dejara sin efecto la resolución emitida por el TPI y la eventual suspensión de la vista señalada. El TCA examinó la disposición de la Ley de Adopción referente al procedimiento que se ha de seguir cuando uno de los adoptantes muere durante el proceso de adopción (32 L.P.R.A. sec. 2699o), denegó la expedición del recurso de *certiorari* y declaró sin lugar la solicitud de paralización de la vista.

Celebrada la vista en su fondo, el 28 de junio de 1999 el TPI emitió *Resolución decreto de adopción*, en la cual concedió la adopción solicitada. De ésta surge que los padres biológicos fueron emplazados personalmente y que éstos no presentaron objeción a la adopción.

---

[1] Mediante escrito titulado *Réplica a Solicitud de Intervención y Escrito de Interventores*, los Procuradores Especiales de Relaciones de Familia comparecieron ante el Tribunal de Primera Instancia (en adelante el TPI) para solicitar que se declarara no ha lugar a la solicitud de intervención y a la oposición de adopción presentada por los peticionarios. Apéndice de la petición de *certiorari*, págs. 59–65.

Las alegaciones de los adoptantes estuvieron sostenidas por los testimonios de la madre biológica, la trabajadora social de la Unidad de Adopción del Departamento de la Familia, del Dr. Julio Lergier y su esposa (quienes son amigos de los adoptantes y, a su vez, padres adoptivos de la hermana de la menor), y la hermana de la madre adoptante. Durante los procedimientos, el TPI designó a la Lcda. María de Lourdes Rodríguez Valledor como defensora judicial de la menor. Tanto el Departamento de la Familia como la Defensora Judicial y la Procuradora de Relaciones de Familia recomendaron favorablemente la adopción.

De la resolución mediante la que se decretó la adopción, surge que los peticionarios fueron escuchados en la vista, sin que se limitaran sus testimonios a la controversia del consentimiento del padre adoptante. Los peticionarios alegaron, además, que el TPI carecía de jurisdicción por haber transcurrido más de ciento veinte días desde la presentación de la petición de adopción sin que ésta se decretara. No obstante, el TPI resolvió que

> [l]uego de evaluar el expediente judicial, el tribunal concluyó que el tiempo requerido para la localización del padre biológico, la muerte del [padre adoptante] requiriendo una segunda evaluación por el Departamento de La Familia y la intervención de los [peticionarios], son justa causa para la dilación de los procedimientos.[2]

Entre otras cosas, el TPI determinó que el padre biológico nunca veló ni se responsabilizó por la menor. Añadió que, a pesar de las limitaciones físicas del padre adoptante por razón de su estado de salud, éste consintió en adoptar a la menor habiendo compartido su custodia por aproximadamente cinco años. Respecto al bienestar de la menor, concluyó que los adoptantes le han satisfecho todas sus necesidades físicas, económicas y emocionales, y le han

---

[2] *Resolución decreto de adopción* emitida por el TPI el 28 de junio de 1999, Apéndice de la Petición de *certiorari*, pág. 90.

ofrecido un hogar estable. Además, resolvió que "[e]l ambiente de familia donde se ha desarrollado la menor le ha permitido presentarse como una niña felíz [sic], extrovertida y sociable".(³) A su vez, dicho ambiente familiar le ha permitido relacionarse frecuentemente con su hermana.

En cuanto a la capacidad económica de la madre adoptante, el TPI determinó que ésta tiene la capacidad de cubrir sus necesidades y las de la menor. Por último, concluyó que el padre adoptante no desistió de su consentimiento a la adopción.

El 11 de agosto de 1999 los peticionarios acudieron ante el TCA para impugnar el dictamen del TPI. En síntesis, alegaron *inter alia* que el TPI violó la cláusula del debido proceso de ley al no permitirles participar como partes en el procedimiento de adopción y cuestionaron, a su vez, la constitucionalidad de la Ley de Adopción bajo la cláusula del debido proceso de ley. El TCA confirmó al TPI y concluyó que la intervención de los peticionarios está limitada a demostrar y probar que su hijo, el padre adoptante, abandonó o desistió de la intención de adoptar a la menor y que las disposiciones cuestionadas no presentan visos de inconstitucionalidad.

Inconformes, el 30 de junio de 2000 los peticionarios acudieron ante nos mediante escrito de apelación, el cual acogimos como un recurso de *certiorari*. Los peticionarios imputan al TCA los errores siguientes:

> I. Erró el tribunal al no observar rigurosamente el debido proceso de ley que garantiza la Constitución del Estado Libre Asociado de Puerto Rico, para la solución de esta controversia en los siguientes aspectos:
> (a) Al no permitir la intervención.
> (b) Al no declararse sin jurisdicción, por haber transcurrido el plazo que fija la ley para terminar el proceso de adopción.
> (c) Al no integrar al proceso de adopción a los abuelos de la menor a adoptarse quien es huérfana de padre.

---

(³) Íd., pág. 91.

(d) Al no permitir la sustitución, al fallecer el futuro padre adoptante, por los herederos de éste.

(e) Al no declarar al futuro padre adoptante incapacitado.

(f) Al no requerir al Departamento de la Familia [que] entrevistar[a] a los padres del adoptante, antes de presentar su informe al Tribunal.

(g) Al no proteger el derecho de propiedad de los herederos del futuro padre adoptante.

II. La ley que establece el procedimiento para la adopción es inconstitucional. Alegato de la parte apelante, págs. 7–8.

Mediante Resolución de 1ro de septiembre de 2000, este Tribunal proveyó no ha lugar al recurso. Los peticionarios presentaron una moción de reconsideración, a raíz de la cual reconsideramos nuestro dictamen anterior, y mediante Resolución de 20 de octubre de 2000, expedimos el auto de *certiorari*. Recibidos los alegatos correspondientes, resolvemos.

## II

La adopción es un acto jurídico solemne, el cual supone la ruptura total del vínculo jurídico-familiar de un menor con su parentela biológica y la consecuente filiación del menor con aquel o aquellos que han expresado la voluntad de que legalmente sea su hijo. *Virella v. Proc. Esp. Rel. Fam.;* 154 D.P.R. 742 (2001); *Feliciano Suárez, Ex parte*, 117 D.P.R. 402 (1986).[4] Bajo esta institución, se equipara la relación filiatoria adoptiva con aquella que se produce naturalmente, con iguales deberes y obligaciones jurídicas y sociales.

La adopción, como institución jurídica, cumple varios propósitos. En el aspecto social, tiene el fin de brindarle a los niños sin padres la oportunidad de criarse y educarse como es debido en el seno de un hogar adecuado, mientras

---

[4] Véanse: J. Puig Brutau, *Compendio de Derecho Civil*, Madrid, Ed. Bosch, 1991, Vol. IV, pág. 153; R. Ortega-Vélez, *Compendio de Derecho de Familia*, San Juan, Pubs. J.T.S., 2000, Vol. I, Sec. 7.7(1), pág. 466.

que a su vez facilita a aquellas personas que loablemente han optado por acoger a dichos niños como si fueran biológicamente suyos, para atenderlos y brindarles el calor y la estabilidad de una familia funcional. *Virella v. Proc. Esp. Rel. Fam.*, supra; *M.J.C.A., menor v. J.L.E.M., menor*, 124 D.P.R. 910 (1989); *Feliciano Suárez, Ex parte*, supra. Ello, en atención a la problemática social que aqueja a nuestra sociedad de niños abandonados o maltratados dentro de un hogar en el cual se supone que reciban amor, protección y cuidado.

Todo lo antes expresado debe ser alcanzado sin que de ninguna manera se sacrifique el propósito primordial de dicha institución, el bienestar del menor. En todo momento se debe proteger al menor, velando siempre que no se le separe indebidamente de sus padres, si las circunstancias particulares lo ameritan, observando simultáneamente que éstos reciban la orientación y ayuda adecuadas. *Virella v. Proc. Esp. Rel. Fam.*, supra; *Ex parte J.A.A.*, 104 D.P.R. 551, 559 (1976). "Sobre toda consideración, sin embargo, la decisión sobre si se autoriza o no la adopción descansa principalmente sobre la premisa de la conveniencia y el bienestar del menor." *Virella v. Proc. Esp. Rel. Fam.*, supra, pág. 754.

La institución de la adopción se rige en el aspecto sustantivo por el Código Civil de Puerto Rico, 31 L.P.R.A. sec. 531 *et seq.* En su aspecto procesal, está gobernada por el Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2699 *et seq.* Respecto a la interpretación del conjunto de normas sustantivas y procesales de la adopción, reiteradamente hemos señalado que éstas deben ser interpretadas liberalmente a favor del adoptando. *Virella v. Proc. Esp. Rel. Fam.*, supra, pág. 756; *Rivera Coll v. Tribunal Superior*, 103 D.P.R. 325, 331 (1975); *Ex parte Ortiz y Lluveras*, 42 D.P.R. 350, 356 (1931). Sin embargo, enfáticamente hemos advertido que " 'la liberalidad en la interpretación no puede conducirnos a violentar la intención legislativa, ni a

consagrar absurdos' ". *Virella v. Proc. Esp. Rel. Fam.*, supra, pág. 756, citando a *Rivera Coll v. Tribunal Superior*, supra, pág. 331.

■ En síntesis, las disposiciones sustantivas disponen los requisitos para ser adoptante, la imposibilidad para serlo, quiénes pueden ser adoptados y las personas llamadas a consentir en la adopción, *inter alia*. El Art. 131 del Código Civil, según enmendado, dispone que "[n]o podrán ser adoptantes las personas *declaradas incapaces por decreto judicial* mientras dure la incapacidad". (Énfasis suplido.) 31 L.P.R.A. sec. 532.

■ Los abuelos biológicos están llamados a consentir a la adopción cuando los padres biológicos sean menores de edad no emancipados. Art. 134(8) del Código Civil, 31 L.P.R.A. sec. 535(8). "En ausencia de éstos, el tribunal designará un defensor judicial *a los padres biológicos.*" (Énfasis suplido.) Íd. Nótese que la comparecencia concedida a los abuelos biológicos emerge del conjunto de deberes y obligaciones impuestas a éstos por la institución de la patria potestad. Este llamado a consentir no surge de su condición de abuelos biológicos; cumple con el propósito de suplir el consentimiento del padre biológico, quien por su minoridad las normas jurídicas no le reconocen capacidad para consentir.

## III

El procedimiento de adopción en Puerto Rico se rige hoy día por la Ley de Adopción. Antes de 1995, imperaba un procedimiento de adopción engorroso y riguroso, caracterizado por serios escollos y dilaciones innecesarias. Véase la Exposición de Motivos de la Ley de Adopción, 1995 Leyes de Puerto Rico 60–61. Esta problemática procesal atentaba contra la felicidad y la política pública de velar por el mejor bienestar de los menores que sean adoptados.

Atendiendo los serios escollos de la legislación pasada, se aprobó la nueva Ley de Adopción de 19 de enero de 1995. En su exposición de motivos, el legislador declaró como interés apremiante el cuidar y promover celosamente la conservación de la unidad familiar. Como corolario, señaló que "[e]s un derecho inalienable de los niños el poder vivir y crecer dentro del seno de un hogar feliz y al calor de sus padres". Leyes de Puerto Rico, *supra*, pág. 60.

Ante los diversos males sociales que atentan contra el bienestar de los menores, la intención legislativa va dirigida a prestar particular atención a los menores maltratados, abandonados y desamparados, para que mediante los mecanismos de adopción éstos puedan formar parte de hogares estables, donde a su vez encuentren la felicidad, el amor, la protección y el desarrollo físico, psicológico, mental y moral. Leyes de Puerto Rico, *supra*.

En atención al mejor bienestar del adoptando, el procedimiento de adopción debe ser expedito, flexible y confidencial, para así proteger el derecho constitucional a la intimidad de las partes implicadas. Art. 1 de la Ley de Adopción, 32 L.P.R.A. sec. 2699. Aun cuando el propósito principal de la Ley de Adopción es flexibilizar y expeditar el procedimiento de adopción —*Pérez, Román v. Proc. Esp. Rel. de Fam.*, 148 D.P.R. 201 (1999)— ello no implica un menoscabo en la intervención del Estado; por el contrario, la Asamblea Legislativa reconoce como principio rector la intervención intensa del Estado para asegurar, en la medida en que sea posible, el bienestar y conveniencia del menor. Exposición de Motivos de la Ley de Adopción.

La Ley de Adopción declara como política pública, en lo pertinente, lo siguiente:([5])

(2) El facilitar en la forma más liberal y amplia posible dentro del esquema jurídico que rige en Puerto Rico los procedimientos de adopción, proveyendo para un procedimiento sim-

---

([5]) 32 L.P.R.A. sec. 2699.

ple, sencillo y expedito cuyo trámite total no exceda de ciento veinte (120) días desde su inicio hasta su resolución final, además simplificar y liberalizar sustancialmente los requisitos de ley para la emisión de decretos de adopción.

(3) La firme aplicación de este estatuto envuelve un interés social apremiante, de la más alta importancia, considerando la época contemporánea en que por razones evidentemente imputables a padres irresponsables y a otros sectores de la sociedad hay miles de niños maltratados, desamparados, abandonados y sin hogar alguno.

Surge del texto antes citado que el legislador flexibilizó y agilizó los procedimientos de adopción con el propósito de proveer el mejor bienestar a los menores, de modo que éstos se incorporen a un hogar saludable, evitando en la medida que sea posible exponerlos a mayor sufrimiento y dolor de los que ya albergan en su ser por causa del maltrato, desamparo o abandono al que han sido expuestos.

En el Art. 2 de la Ley de Adopción se reitera que el procedimiento será expedito y flexible, y que éste *deberá* ser tramitado dentro de un término máximo de ciento veinte días a partir de la petición de adopción. 32 L.P.R.A. sec. 2699a. Al establecer que el procedimiento de adopción será expedito(6) y flexible, denota que el proceso ha de ser desenmarañado o libre de los requerimientos procesales ordinarios que en el pasado dilataban en extremo el decreto de la filiación adoptiva y frustraban a su vez la política pública del Estado de velar por el bienestar de los menores desamparados y abandonados.

Una vez presentada la petición de adopción, se notificará a los padres biológicos o al tutor del menor, cuando éstos no hayan dado su consentimiento en el escrito de petición. Art. 4(1) de la Ley de Adopción, 32 L.P.R.A. sec. 2699c(1). Además, tendrá que notificarse al Procurador de

---

(6) La Real Academia Española define *expedito* como: desembarazado, libre de todo estorbo. *Diccionario de la Lengua Española*, 21ra ed., Madrid, Espasa-Calpe, 1992, pág. 660. Significa, además, despejado, desocupado, libre. Á. López García-Molins, *Diccionario de Sinónimos y Antónimos de la Lengua Española*, Valencia, Ed. Alfredo Ortells, 1985, pág. 450.

Familia (y, en su defecto, al Director de la Oficina de Investigación y Procesamiento de Asuntos de Menores y Familia del Departamento de Justicia), al Secretario de Familia y a las personas con las cuales el adoptando haya estado residiendo al momento de presentarse la petición de adopción. Art. 4(3) de la Ley de Adopción, 32 L.P.R.A. sec. 2699c(3). Tanto el Procurador de Familia como el Secretario de Familia han de ser notificados para asegurar la intensa intervención del Estado con el propósito de velar por el mejor bienestar del menor. Dado el conocimiento especializado que se reconoce al Secretario de Familia en esta materia, éste alberga la responsabilidad de realizar el estudio social pericial correspondiente y rendir un informe al respecto. Íd.

■ Toda persona con derecho a ser notificada podrá exponer su posición en torno a la petición de adopción. Art. 4(6) de la Ley de Adopción, 32 L.P.R.A. sec. 2699c(6). Los padres con patria potestad y aquellos que no la ejerzan por razón de un decreto judicial de divorcio, así como el tutor o custodio del adoptando, el adoptando que tiene menos de diez años y más de siete años de edad,[7] y los abuelos del adoptando menor de edad huérfano de padres, o de padre o madre, tendrán *derecho a ser oídos* en el procedimiento de adopción. Íd.

■ Una vez iniciado el procedimiento y sin que se hubiese emitido el decreto de adopción, si la persona o personas que pretenden convertirse en padres adoptantes fallecieren, ésta se presumirá consentida. Art. 16 de la Ley de Adopción, 32 L.P.R.A. sec. 2699o. "En estos casos, el tribunal podrá aprobar la adopción siempre que, a la fecha del fallecimiento del adoptante o adoptantes, el adoptando hubiere vivido en el hogar de éstos por lo menos seis (6) meses antes de su fallecimiento." Íd. El tribunal designará un de-

---

[7] Los adoptandos mayores de diez años deben consentir a la adopción. Art. 134(2) del Código Civil, 31 L.P.R.A. sec. 535(2).

fensor judicial al adoptando y notificará a los herederos forzosos, o presuntos herederos forzosos, del adoptante fallecido, quienes podrán rebatir la presunción sobre el consentimiento del causante. Se concede a los herederos forzosos del peticionario fallecido el derecho a ser oídos en el procedimiento de adopción, a los fines de establecer que el causante había desistido de su consentimiento a la adopción dentro del período de la presentación de la petición y su fallecimiento. Íd. Conforme a la Ley de Adopción, los herederos forzosos tendrán el peso de la prueba. Íd.

## IV

Antes de considerar los planteamientos constitucionales sobre el debido proceso de ley, debemos dirimir si los demás errores señalados fueron cometidos, conforme a las disposiciones referentes a la institución de la adopción.

A. *Derecho de los peticionarios a intervenir como parte en el procedimiento de adopción*

Arguyen los peticionarios que conforme a la Regla 21.1 de Procedimiento Civil, *supra*, se les debió permitir intervenir en el procedimiento de adopción como partes, por ser éstos los herederos forzosos del padre adoptante. No les asiste la razón.

Como expusiéramos anteriormente, la Ley de Adopción estableció un procedimiento especial con el propósito de expeditar y flexibilizar el procedimiento de adopción. Aun cuando el derecho hereditario de los peticionarios se vea afectado por el decreto de adopción, ello no significa que deba aplicarse la Regla 21.1 de Procedimiento Civil, *supra*, que regula la intervención de partes, a este tipo de caso, lo cual desarticularía la política pública enmarcada por la Ley de Adopción y los propósitos de ésta en beneficio de los niños maltratados, abandonados y desamparados.

El derecho de los peticionarios en este caso se limita exclusivamente a ser oídos, a los efectos de establecer el desistimiento del padre adoptante en cuanto a su consentimiento a la adopción. 32 L.P.R.A. sec. 2699o. No aplican, por consiguiente, los principios de intervención como partes que ordinariamente rigen los procedimientos bajo la Regla 21.1 de Preocedimiento Civil, *supra*.

El procedimiento de adopción fue creado con el propósito de proveer una oportunidad de vida dentro del calor del seno familiar a menores que han sido maltratados, abandonados o desamparados. No es propio convertir el procedimiento de adopción en un pleito de herencia. Una vez decretada la adopción, los que reclaman ser herederos del padre adoptante podrán dilucidar, mediante el derecho de sucesión aplicable, lo que corresponda a través de acuerdos o mediante acción judicial.

B. *Jurisdicción del TPI al haber transcurrido más de ciento veinte días desde la presentación de la petición de adopción hasta su resolución final*

Señalan los peticionarios que el TPI actuó sin jurisdicción al haber transcurrido ciento veinte días sin haber emitido el decreto de adopción.

La Ley de Adopción requiere que el procedimiento sea tramitado dentro de un término de ciento veinte días. El Art. 2 de la Ley de Adopción, *sùpra*, dispone: "El procedimiento de adopción será expedito y flexible, y deberá ser tramitado en su totalidad dentro de un término máximo de ciento veinte (120) días a partir de la presentación de adopción hasta su resolución final." 32 L.P.R.A. sec. 2699a. Los tribunales deben cumplir estrictamente con dicho requerimiento en pro de la conveniencia y el bienestar del menor. Conforme al término establecido se impone al tribunal y demás partes en el procedimiento de adopción, actuar pronta y diligentemente en su tramitación, para que el menor recupere el derecho natural a criarse, educarse y ser

amado dentro de un hogar, derecho que por circunstancias particulares le ha sido arrebatado.

 Resolvemos que el término dispuesto es de estricto cumplimiento, no jurisdiccional. No debe aplicarse de manera irrazonable e inflexible, de modo que impida el propósito primordial de la institución de la adopción, esto es, el bienestar del menor. Cuando las circunstancias particulares lo ameriten y redunde en el bienestar del menor, el procedimiento podrá extenderse por un término mayor al establecido. Sin embargo, debe mediar justa causa para que el tribunal extienda dicho término. El procedimiento de adopción es expedito y flexible, no un procedimiento sumario; por lo que admite la posibilidad de concluir los procedimientos luego de haber transcurrido más de ciento veinte días, siempre que el juzgador determine que ha mediado justa causa para su extensión y que ésta redunde en el mejor bienestar del menor.

Concluyó el TPI que, luego de evaluar los autos ante sí, la dilación de los procedimientos estuvo justificada por el tiempo requerido para la localización del padre biológico; la muerte del padre adoptante, lo cual requirió una segunda evaluación del Departamento de la Familia, y la amplia participación de los peticionarios. Tras evaluar la totalidad de los autos del caso, entendemos que las circunstancias particulares surgidas en este caso y las razones esgrimidas por el TPI como fundamento para la dilación de los procedimientos, satisfacen el criterio de justa causa.

C. *Integración de los abuelos biológicos al procedimiento de adopción*

 Las normas sustantivas de adopción disponen que los abuelos biológicos están llamados a consentir a la adopción cuando los padres biológicos del menor que será adoptado son menores de edad no emancipados. Art. 134(8) del Código Civil, 31 L.P.R.A. sec. 535(8). Bajo la normativa sustantiva no se concede ningún otro derecho a los abuelos

biológicos, ni siquiera cuando el padre biológico del menor que será adoptado le ha premuerto. La intervención concedida a los abuelos biológicos se limita a los fines de suplir el consentimiento de los padres biológicos, que por disposición estatutaria están impedidos de prestarlo.

En busca del mejor bienestar del menor, la Ley de Adopción reconoce a los abuelos biológicos del adoptado menor de edad huérfano de padres, o de padre o madre, el derecho a ser oídos. 32 L.P.R.A. sec. 2699c(6). No obstante, no requiere que éstos sean notificados cuando durante la tramitación del proceso muere su hijo o hija, quien a su vez es el padre o madre del menor que será adoptado. Entendemos que este derecho ha sido reconocido en atención a la relación afectiva que comúnmente se desarrolla dentro de nuestra cultura entre abuelos y nietos. Esta normativa responde a la política pública de buscar el mejor bienestar del menor, en el sentido de que, en ausencia de uno de los padres biológicos o la ausencia de ambos, el parecer u opinión de los abuelos biológicos que se han relacionado con sus nietos es un insumo de gran valor para el juzgador de los hechos en sus determinaciones con respecto a la conveniencia de la adopción para el menor.

Arguyen los peticionarios que era indispensable la presencia de los abuelos biológicos de la menor (padres del padre biológico) en el procedimiento. Entendemos que los peticionarios no poseen legitimación activa para reclamar los derechos que alegadamente les corresponden a los abuelos biológicos.

■ Reiteradamente hemos expresado que el reclamante de un derecho posee legitimación activa si cumple con los requisitos siguientes, que: (1) ha sufrido un daño claro y palpable; (2) el referido daño es real, inmediato y preciso, y no abstracto o hipotético; (3) que existe conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge bajo el palio de la Constitución o de una ley. Véanse: *Col. Peritos Elec. v. A.E.E.*, 150 D.P.R.

327 (2000); *Coss y U.P.R. v. C.E.E.*, 137 D.P.R. 877 (1995); *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994); *Hernández Torres v. Hernández Colón et al.*, 131 D.P.R. 593 (1992). Al determinar si un reclamante posee legitimación activa, el juzgador deberá tomar como ciertas sus alegaciones y las interpretará de la manera más favorable a éste. *Col. Peritos Elec. v. A.E.E.*, supra, pág. 746; *Col. Ópticos de P.R. v. Vani Visual Center*, 124 D.P.R. 559, 567 (1989).

Conforme a las normas sustantivas y procesales antes discutidas, es a los abuelos biológicos a quienes les ha sido concedido algún tipo de participación en el procedimiento de adopción, ello a tenor de las circunstancias dispuestas por ley. Tomando como ciertas las alegaciones de los peticionarios, concluimos que éstos no han sufrido daño alguno por no haberse integrado al procedimiento los abuelos biológicos.

Según indicamos, el derecho de los peticionarios se limita a ser oídos, a los fines de establecer que el padre adoptante desistió de su consentimiento a la adopción. Al no integrar a los abuelos biológicos, de ninguna forma se afectó el derecho a ser oídos de los peticionarios. Por el contrario, surge de los autos que los peticionarios tuvieron la oportunidad de ser oídos conforme a la Ley de Adopción, derecho que ejercieron sin restricción alguna.

Debemos señalar, además, que conforme a las disposiciones discutidas y las circunstancias particulares de este caso, no era indispensable la presencia de los abuelos biológicos de la menor en el procedimiento. Debemos notar que la menor fue entregada al cuidado de los padres adoptantes cuando apenas tenía seis meses de nacida. Conforme a las determinaciones de hecho del TPI, el padre biológico nunca se preocupó por el bienestar de la menor. No podemos escapar ante la realidad de que el concepto de familia inmediata para la menor se limita a ella y sus padres adoptivos.

Con el propósito de conservar un proceso expedito y flexible, la Ley de Adopción concede a los abuelos biológicos de la menor el derecho a ser oídos, mas no requiere que el tribunal o las partes les notifiquen. Ya que éstos no están llamados por ley a consentir en el proceso, y siendo deber de éstos solicitar el ser oídos dentro del procedimiento, entendemos que no se cometió el error señalado por los peticionarios al respecto.

### D. *Inclusión de los peticionarios como partes, en sustitución del padre adoptante*

Los peticionarios arguyen que a tenor de la Regla 22.1 de Procedimiento Civil, *supra*,[8] el tribunal venía obligado a ordenar que éstos fueran incluidos como partes en el procedimiento de adopción en sustitución de su hijo, el padre adoptante.

Como ya indicáramos, el procedimiento establecido por la Ley de Adopción es un procedimiento especial, el cual concede a los herederos forzosos del padre o madre adoptante que ha muerto durante el procedimiento de adopción, el derecho a ser oídos. Indicamos, además, que este derecho no les permite ser partes en el procedimiento. Su intervención es con el único propósito de derrotar la presunción establecida por la Ley de Adopción a los efectos de que

---

[8] La Regla 22.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone:

"(a) Si una parte falleciere y la reclamación no quedare por ello extinguida, cualquiera de las partes en el procedimiento o sus abogados notificarán de su fallecimiento al tribunal y a las otras partes dentro del término de treinta (30) días contados desde la fecha en que se conozca de tal hecho. El tribunal, a solicitud hecha dentro de los seis (6) meses siguientes a la fecha de dicha notificación, ordenará la sustitución de la parte fallecida por las partes apropiadas. Si la sustitución no se hiciere, según se dispone anteriormente, el pleito será sobreseído en cuanto a la parte fallecida. Podrán presentar la solicitud de sustitución los sucesores o representantes del finado o cualquiera de las partes, y dicha solicitud se notificará a las partes en la forma dispuesta en la Regla 67, y a las que no lo fueren en la forma que dispone la Regla 4.

"(b) De fallecer uno o más demandantes, o uno o más demandados, que fueren partes en un pleito en que el derecho reclamado subsista sólo a favor de los demandantes o en contra de los demandados que sobrevivan, el pleito no finalizará. Se consignará en los autos el hecho de la muerte y el pleito continuará en favor o en contra de las partes sobrevivientes."

el padre adoptante consintió a la adopción. Art. 16 de la Ley de Adopción, *supra*.

 En vista de la política pública y los propósitos de la Ley de Adopción, resolvemos que resultan inaplicables las reglas sobre sustitución de parte, Regla 22.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, en los procedimientos de adopción, cuando muere el padre adoptante. En esta situación, el procedimiento prosigue con la madre adoptante como parte y con los herederos del padre adoptante fallecido con el derecho a ser oídos, según dispone la ley.

## E. *Capacidad del padre adoptante para adoptar*

Señalan los peticionarios que el TPI debió haber determinado que el padre adoptante estaba incapacitado para adoptar a tenor del Art. 131 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 532. Entienden los peticionarios que la incapacidad a la que se refiere el citado artículo no tiene que ser declarada por un tribunal de justicia y que ésta incluye todo tipo de incapacidad física. Dicha alegación es totalmente inmeritoria.

Antes del 19 de enero de 1995, el Art. 131 disponía que en los casos en los cuales los adoptantes estuviesen casados, éstos debían adoptar conjuntamente, salvo cuando éstos estuvieran separados *o uno de ellos estuviera incapacitado*. Art. 131 del Código Civil, *supra*. Nada disponía sobre el tipo de incapacidad a que se refería. No obstante, dicha laguna fue atendida por la Ley Núm. 8 de 19 de enero de 1995, que enmendó las disposiciones sustantivas relativas a la adopción. En lo pertinente, el Art. 131, según enmendado, dispone que "[n]o podrán ser adoptantes las *personas declaradas incapaces por decreto judicial* mientras dure la incapacidad". (Énfasis suplido.) Art. 131 del Código Civil, *supra*.

En vista de que el padre adoptante no ha sido declarado incapaz mediante decreto judicial ni los peticionarios cuestionaron la capacidad del padre adoptante para consentir a

la adopción, concluimos que no se cometió el error señalado.

F. *Requerimiento al Departamento de la Familia para que entrevistara a los peticionarios*

Aducen los peticionarios que el TPI debió exigir que el Departamento de la Familia los entrevistara en relación con la adopción, ya que consideran que son precisamente ellos quienes podían brindar con mayor exactitud información sobre el historial de los padres adoptivos.

▆ La Ley de Adopción requiere una intervención intensa del Estado en el trámite de la adopción. Exposición de Motivos de la Ley de Adopción, *supra*. Dicha intervención se hace efectiva mediante la inclusión del Secretario de Familia y el Procurador de Familia como partes en el procedimiento. En vista del conocimiento especializado del Secretario de Familia, la Ley de Adopción requiere que éste realice un estudio social pericial y rinda el informe correspondiente, incluyendo sus recomendaciones con respecto a la conveniencia de la adopción. Arts. 4c(3) y 6 de la Ley de Adopción, 32 L.P.R.A. secs. 2699c(3) y 2699e. No obstante, dicho informe no obliga al tribunal a actuar conforme a lo expresado en éste. 32 L.P.R.A. sec. 2699e(4).[9]

La Ley de Adopción sólo dispone cuál es el contenido del informe social pericial, pero nada establece respecto a las personas que deben ser entrevistadas. 32 L.P.R.A. sec.

---

[9] *"Sec. 2699e. Informe del estudio social pericial*

"El Departamento de la Familia rendirá un informe del estudio social pericial al tribunal para la adjudicación de toda petición de adopción de un menor de edad o incapacitado.

. . . . . . . .

*"(4) Alcance del informe.—*....

"El tribunal tomará en cuenta el contenido del informe así como las recomendaciones del trabajador social, pero no vendrá obligado a actuar conforme a lo expresado en ellos ni a las recomendaciones contenidas en el mismo." 32 L.P.R.A. sec. 2699e(4).

2699e. Dado el conocimiento especializado del Secretario de Familia, tiene discreción para determinar a quiénes ha de entrevistar al conducir el estudio social pericial. Sin embargo, el tribunal tiene la facultad de ordenar al Departamento de Familia que entreviste a determinada persona, en específico, cuando el bienestar del menor así lo amerite y dicha orden no socave innecesariamente los propósitos de expeditar y flexibilizar el procedimiento de adopción. Además, dicha entrevista debe ser de tal importancia que sin ella el tribunal no pueda emitir un juicio sobre la conveniencia de la adopción para el adoptando.

Los peticionarios no demostraron al TPI, de manera convincente, la importancia de ser entrevistados por el Departamento de Familia. Además, nos sorprende dicho planteamiento dado que el TPI permitió a los peticionarios expresarse en el proceso sin limitación alguna, cuando en estricta norma jurídica sólo tenían derecho a ser oídos, a los fines de derrotar la presunción sobre el consentimiento prestado por el padre adoptante. Deben recordar los peticionarios que es el tribunal quien autoriza la adopción y no el Secretario de Familia. Entendemos que el TPI actuó correctamente al no requerir al Departamento de Familia que entrevistara a los peticionarios, como éstos pretendían.

## V

La Sec. 7, Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, al igual que las Enmiendas V y XIV de la Constitución de Estados Unidos, garantizan que ninguna persona sea privada de su libertad o propiedad sin un debido proceso de ley.

El debido proceso de ley se manifiesta en dos vertientes distintas: sustantiva y procesal. En su vertiente sustantiva, el tribunal examina la validez de una ley, conforme a los preceptos constitucionales pertinentes, a los fines de

proteger los derechos fundamentales de las personas. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 887 (1993). Bajo este análisis, el Estado está impedido de aprobar leyes o realizar alguna actuación que afecte de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. Íd.; *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 562 (1992); *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 265, 273 (1987). Además, ésta debe tener una relación real y sustancial con el interés estatal que se persigue. *Defendini Collazo et al. v. E.L.A., Cotto*, 134 D.P.R. 28, 74 (1993); *A. Roig, Sucrs. v. Junta Azucarera*, 77 D.P.R. 342, 357 (1954); *Nebbia v. New York*, 291 U.S. 502, 525 (1934). En *Morales v. Lizarribar*, 100 D.P.R. 717, 731 (1972), resolvimos que los tribunales

> ... no entrarán en consideraciones sobre la sabiduría de las medidas legislativas, sino que sostendrán su constitucionalidad a menos que no tengan un propósito público legítimo, o sean claramente arbitrarias, o que no guarden una relación razonable con el propósito público que persiguen. Véase *Defendini Collazo et al. v. E.L.A., Cotto*, supra, pág. 74.

El debido proceso de ley procesal "impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo". *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, págs. 887–888. Véase *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987). Al determinar cuál es el proceso apropiado para privar algún individuo de un derecho protegido, debemos observar los tres criterios establecidos por el Tribunal Supremo de Estados Unidos en *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) determinar cuáles son los intereses afectados por la acción oficial; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar méto-

dos alternos. Véanse: *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 888; *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982).

Veamos, en primer lugar, si el tribunal observó rigurosamente el debido proceso de ley en este caso.

A. El procedimiento celebrado ante el TPI fue adopción, que no incluía controversias de índole sucesoral. Basta una somera lectura del texto de la Ley de Adopción para darse cuenta de que es inadmisible ventilar controversias que nada tienen que ver con la conveniencia y el bienestar del menor al éste ser adoptado.

No vemos de qué manera el TPI violó la cláusula sobre debido proceso de ley, cuando dicho foro le permitió a los peticionarios presentar prueba para refutar la presunción sobre el consentimiento del padre adoptante a la adopción, y les concedió además, sin ser ello necesario, una participación mayor a la que les es reconocida por la Ley de Adopción. El TPI observó un procedimiento justo y equitativo, por lo que concluimos que dicho tribunal cumplió con la cláusula sobre el debido proceso de ley.

Como anteriormente expresamos, no es propio tornar el procedimiento de adopción en un pleito de herencia. Una vez decretada la adopción, aquellos que entiendan que tienen una participación en la herencia del padre adoptante, podrán dilucidar sus derechos hereditarios dentro del pleito correspondiente conforme al derecho sucesoral.[10]

B. En segundo lugar, los peticionarios atacan la constitucionalidad de la Ley de Adopción porque ésta sólo les

---

[10] Luego de la muerte del padre adoptante se inició un procedimiento independiente sobre declaratoria de herederos. Mediante Resolución de 2 de marzo de 1999 se declaró a los peticionarios como únicos y universales herederos del padre adoptante, y a su viuda en la cuota viudal usufructuaria. La declaratoria de herederos fue emitida sin perjuicio de tercero con mejor derecho. En dicha resolución el tribunal tomó conocimiento del procedimiento para adoptar a la menor. El tribunal concluyó: "[e]ste tribunal retiene jurisdicción para, en caso de que se conceda la adopción solicitada, enmendar la presente declaratoria de herederos." Resolución de 2 de marzo de 1999 emitida en el procedimiento sobre declaratoria de herederos Civil Núm. KJV 99–0148, Apéndice de la Petición de *certiorari*, pág. 66.

concede el derecho a ser oídos y no les permite ser partes en el pleito, privándoles de esta forma de sus derechos hereditarios. Además, alegan que las disposiciones de la Ley de Adopción violan la cláusula sobre el debido proceso de ley ya que, de faltar el padre adoptante, recaería sobre ellos la obligación de alimentar a la menor.

La Ley de Adopción fue aprobada con el propósito de proveer un hogar funcional a los niños maltratados, abandonados o desamparados. El propósito primordial de dicha legislación es la conveniencia y el bienestar del menor que será adoptado. Esta legislación obedece al interés apremiante del Estado de proteger a los niños de nuestro país que han sido maltratados, abandonados o desamparados, brindándoles a su vez la oportunidad de vivir dignamente resguardados por el calor de una familia. Entendemos que el derecho de todo niño a vivir bajo el ala protectora de un hogar es consustancial al derecho a la vida garantizado por la Constitución del Estado Libre Asociado de Puerto Rico. Art. II, Sec. 7, Const. E.L.A., *supra.*

La declaración de política pública de la Ley de Adopción dispone que el procedimiento de adopción ha de ser confidencial, para así proteger el derecho constitucional a la intimidad de las partes. 32 L.P.R.A. sec. 2699. Nótese que la Ley de Adopción garantiza al menor derechos fundamentales, tales como el derecho a vivir con una familia y su derecho a la intimidad.

Aun cuando el procedimiento de adopción puede tener algún efecto incidental sobre los derechos hereditarios, ésta no afecta de manera irrazonable, arbitraria o caprichosa los intereses de los peticionarios. Además, tiene una relación real y sustancial con el interés estatal que se persigue. Según expresáramos anteriormente, constituye un interés apremiante del Estado hacer viable el procedimiento de adopción y proteger a los niños desaventajados que han recibido el beso del maltrato, abandono y desamparo.

La adopción de un niño es una decisión que acarrea grandes responsabilidades morales, sociales y jurídicas, por lo que la voluntad y el compromiso de convertirse en padre o madre adoptante surge antes de la solicitud de adopción. Debe entenderse que el adoptante ha dado su consentimiento a la adopción desde el momento cuando fue solicitada, a menos que el adoptante desista de éste durante el trámite de adopción. La Ley de Adopción presume que si el adoptante muere antes de finalizar el procedimiento, se entenderá que ha fallecido manteniendo de forma íntegra su consentimiento a la adopción, siempre que, a la fecha del fallecimiento del adoptante, el adoptando hubiere vivido en el hogar de éste por lo menos seis meses antes de su fallecimiento. 32 L.P.R.A. sec. 2699o. En vista del interés apremiante del Estado en hacer viable el procedimiento de adopción y el mecanismo dispuesto por la ley aquí concernida, mediante la cual se le concede a los presuntos herederos forzosos del peticionario fallecido el derecho a rebatir la presunción establecida, entendemos que la Ley de Adopción es constitucionalmente válida.

Bajo el palio de la Constitución del Estado Libre Asociado de Puerto Rico, la protección y el bienestar de los niños están revestidos de una importancia mayor que las consecuencias u obligaciones incidentales al decreto de adopción.

Por las razones que anteceden, *confirmamos el dictamen del Tribunal de Circuito de Apelaciones. El trámite seguido por el Tribunal de Primera Instancia cumplió con las disposiciones de la Ley Núm. 9,* supra, *y ambos, a su vez, cumplen con los requisitos del debido proceso de ley.*

*Se dictará sentencia de conformidad.*

La Juez Asociada Señora Naveira de Rodón concurrió con el resultado con opinión escrita, a la cual se unió el Juez Asociado Señor Fuster Berlingeri.