ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| GLADYS REYES ROJAS Y OTROS<br><br>Peticionarios<br><br>v.<br><br>LITZY BELÉN ÁLVAREZ REYES Y OTROS<br><br>Recurridos | TA2025CE00670 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: TB2024CV00700<br><br>Sobre: División o Liquidación de Comunidad de Bienes Hereditarios |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 17 de diciembre de 2025.

Comparece la parte demandante y peticionaria del epígrafe para solicitar nuestra intervención y revocar la *Resolución* emitida el 2 de septiembre de 2025, notificada el día 4 siguiente, por el Tribunal de Primera Instancia, Sala de Bayamón (TPI). En el referido pronunciamiento, a petición de parte, el TPI descalificó al Lcdo. Rogelio José Vélez Vera por su rol dual como abogado y notario en el pleito ante sí. Esta determinación fue sostenida por el TPI en la *Resolución* dictada y notificada los días 23 y 24 de septiembre de 2025, respectivamente, en la cual rechazó reconsiderar su decisión.

Por las razones que expondremos, anticipamos la expedición del recurso discrecional de *certiorari* y la confirmación de la *Resolución* impugnada.

### I.

El caso del título se inició el 2 de diciembre de 2024, ocasión en que, por conducto del licenciado Vélez Vera, los demandantes Gladys Reyes Rojas, Francisco Reyes Rojas, Eddie Verdejo Rojas —herederos de la causante testada Belén Rojas Náter—; así como Daisy Rivera Reyes, David Rivera Reyes y Wilma Rivera Reyes —herederos sustitutos por

virtud de la causante Esperanza Reyes Rojas— presentaron una acción civil sobre división y liquidación de comunidad de bienes hereditarios contra la parte demandada y recurrida, Litzi Álvarez Reyes y Judith Álvarez Reyes, quienes conforman la sucesión de la causante Ofelia Reyes Rojas y la sustituyen en la comunidad hereditaria cuya división se solicita.[1] En síntesis, los demandantes peticionaron la división del caudal compuesto por un bien inmueble, en referencia a la finca 14518 de siete cuerdas, sita en Toa Baja, y bienes muebles consistentes en unas cuantías dinerarias por concepto del arrendamiento de la parte posterior de la propiedad. Por consiguiente, solicitaron que se ordenara el inventario, avalúo, liquidación, división y adjudicación de los bienes hereditarios en común.

El 17 de marzo de 2025, las hermanas Álvarez Reyes instaron *Contestación a Demanda.*[2] Posteriormente, a solicitud de los demandantes,[3] enmendaron el formato de su alegación responsiva.[4] En particular, adujeron que la finca 14518 pertenece en común proindiviso a una sucesión, por lo que se requería la comparecencia de todos sus miembros.[5] Arguyeron también que los demandantes realizaron una segregación, no administrativa, de dicha finca, de la cual delimitaron de forma extrarregistral una parcela de 3,444.911 metros cuadrados. Afirmaron que los contendientes eran dueños de una participación alícuota de dicho predio. Añadieron que entregaron a los demandantes unos $10,000.00 que había recibido la causante Ofelia Reyes Rojas por concepto de las rentas del alquiler. Las demandadas aseveraron también que estaban interesadas en adquirir la propiedad.

---

[1] Anejo 1 o entrada 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[2] Anejo 5 o entrada 20 de SUMAC. El 12 de diciembre de 2024, las demandadas habían comparecido de manera especial y sin someterse a la jurisdicción. Véase, anejo 2 o entrada 7 de SUMAC.

[3] Anejos 6-7 o entradas 23-24 de SUMAC

[4] Anejo 8 o entrada 25 de SUMAC.

[5] Surge del expediente la alegación de que existe un cuarto hijo de la causante Esperanza Reyes Rojas llamado José David Rivera Reyes.

Entonces, el 10 de abril de 2025, los demandantes solicitaron una orden para consignar $36,884.11 de los cánones de arrendamiento acumulados. Por igual, peticionaron la consignación de la suma de $20,000.00 como oferta para adquirir la participación de las demandadas. En el escrito, además, el licenciado Vélez Vera informó acerca de su intervención notarial en el otorgamiento de la Escritura Pública 21 de 9 de abril de 2025, mediante la cual el señor Reyes Rojas adquirió por compraventa las participaciones alícuotas, abstractas e indivisibles de la finca 14518 del resto de los demandantes, por el precio de $60,000.00.[6]

Así las cosas, transcurridos ciertos eventos procesales del pleito[7] y otras desavenencias relacionadas con el valor real de la finca debido a su actividad comercial, las hermanas Álvarez Reyes incoaron el 19 de agosto de 2025 la *Moción al amparo de la Regla 5 del Reglamento Notarial*.[8] Plantearon que indubitadamente el caso de marras era uno contencioso y que, en el mismo pleito, el licenciado Vélez Vera había autorizado la antes referida Escritura Pública 21. Instaron al TPI a tomar conocimiento del hecho y a adoptar una determinación sobre ese particular.

En cumplimiento de *Orden*,[9] el licenciado Vélez Vera presentó su postura.[10] En suma, sostuvo que la Escritura Pública 21 otorgada entre los demandantes, representados a su vez por él, no constituía un conflicto de intereses entre su función notarial y como abogado, ya que los otorgantes no se encontraban divididos, ni él estaba actuando posteriormente a favor o en contra de las partes que comparecieron al instrumento público de compraventa de las participaciones alícuotas.

---

[6] Anejo 9 o entrada 27 de SUMAC; en particular, el primer exhibit.

[7] El 30 de julio de 2025, las demandadas solicitaron la descalificación del licenciado Vélez Vera, al imputarle sendas infracciones al Canon 35, sobre sinceridad y honradez, así como al Canon 21, que versa sobre el conflicto de intereses. El licenciado Vélez Vera negó cualquier violación a los preceptos éticos. El TPI le dio la razón y declaró no ha lugar la solicitud de descalificación el 15 de agosto de 2025. Véanse, Anejos 17, 19 y 21 o entradas 49, 51 y 55 de SUMAC, respectivamente.

[8] Anejo 22 o entrada 58 de SUMAC.

[9] Anejo 23 o entrada 59 de SUMAC.

[10] Anejo 24 o entrada 60 de SUMAC.

Las demandadas Álvarez Reyes replicaron para aducir que la Regla 5 del Reglamento Notarial expresamente proscribía que un abogado represente a un cliente en un litigio contencioso y, a la vez, funja como notario en el mismo pleito, debido al potencial conflicto de intereses o incompatibilidades que puedan surgir. Reiteraron que el caso de autos no se trataba de un asunto *ex parte*, sino que existían controversias en cuanto al valor de la finca 14518 objeto de la acción civil.[11]

El 4 de septiembre de 2025, el TPI notificó la *Resolución* recurrida y declaró con lugar la moción de las demandadas.[12] A esos efectos, descalificó al licenciado Vélez Vera, "por su rol dual como abogado y notario en contravención al Reglamento Notarial". Aclaró, sin embargo, "que la descalificación del licenciado se trata únicamente de una medida cautelar en este pleito en específico, que esto no constituye una acción disciplinaria y que tampoco implica que tenga que culminar su relación de abogado-cliente en otros asuntos". En consecuencia, ordenó a la parte demandante a anunciar una nueva representación legal.

Inconformes, los demandantes solicitaron la reconsideración del dictamen interlocutorio, al insistir que no se incurrió en conflicto de intereses entre los otorgantes de la Escritura Pública 21.[13] Por su parte, las demandadas Álvarez Reyes reafirmaron su posición a favor de la descalificación debido a la función dual. En específico, indicaron que el licenciado Vélez Vera fungió como notario y asesor de una parte litigante, que adjudicó un valor a unas porciones alícuotas del inmueble, el cual ha sido cuestionado y que podría resultar ser distinto si se consideraba la rentabilidad de la actividad comercial que acontece en una porción de la propiedad.[14] Así, pues, el TPI reafirmó su decisión descalificatoria, lo que notificó el 24 de septiembre de 2025.[15]

---

[11] Anejo 25 o entrada 61 de SUMAC.
[12] Anejo 26 o entrada 65 de SUMAC.
[13] Anejo 27 o entrada 70 de SUMAC.
[14] Anejo 29 o entrada 72 de SUMAC.
[15] Anejo 30 o entrada 73 de SUMAC.

Oportunamente, el 24 de octubre de 2025, la parte peticionaria, por conducto del licenciado Vélez Vera, presentó el recurso de *certiorari* que nos ocupa y señaló la comisión del siguiente error:

ERRÓ EL HONORABLE TPI AL DESCALIFICAR LA REPRESENTACIÓN LEGAL DE LA PARTE DEMANDANTE POR HABER AUTORIZADO UNA ESCRITURA DE COMPRAVENTA DE PARTICIPACIONES ALÍCUOTAS DE TODOS SUS REPRESENTADOS MIEMBROS DE COMUNIDAD HEREDITARIA Y PARTES DEMANDANTES EN EL CASO DE AUTOS TODA VEZ QUE EN EL PRESENTE LITIGIO NO EXISTE CONFLICTO DE INTERESES ENTRE LOS MIEMBROS DE LA PARTE DEMANDANTE Y A OTORGANTES DE LA ESCRITURA NI SE RECLAMAN ENTRE SÍ CONTRAPRESTACIONES ALGUNAS RELACIONADAS A LA ESCRITURA.

En cumplimiento de nuestra *Resolución*, la parte recurrida interpuso un *Memorando en oposición a expedición de auto de certiorari* el 5 de noviembre de 2025. Con el beneficio de ambas comparecencias, procedemos a resolver.

**II.**

**A.**

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita taxativamente las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *certiorari*. En su parte pertinente, la norma dispone que, por excepción, este foro intermedio podrá revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones del tribunal primario en situaciones en las cuales esperar a la apelación constituiría un fracaso irremediable de la justicia. Como se sabe, el Tribunal Supremo ha pautado que **las órdenes de descalificaciones son revisables de acuerdo con la Regla 52.1 de Procedimiento Civil**, *supra*, ya que precisamente "esperar a una apelación constituiría un fracaso irremediable a la justicia". *Job Connection Center v. Sups. Econo*, 185 DPR 585, 601 (2012).

Asimismo, en el ejercicio de nuestra discreción, revisamos el auto de *certiorari* del título, al palio de los siete criterios esbozados en la Regla

40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025). Entre éstos, mueve nuestra discreción la etapa idónea del procedimiento en que se presenta el caso para su consideración, ya que las partes no han culminado el descubrimiento de prueba y aún pueden alcanzar acuerdos transaccionales. Además, nos persuade el hecho que la expedición del auto no causa un fraccionamiento indebido del litigio ni una dilación indeseable en su resolución final. Claro está, en el examen del expediente, es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018) y la jurisprudencia allí citada.

**B.**

La Regla 9.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 9.3, establece que un tribunal, en el ejercicio de su poder inherente de supervisar a los miembros de la profesión legal que postulan ante sí, puede descalificar a un abogado que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o que infrinja sus deberes hacia el tribunal, sus representados o compañeros abogados. El Tribunal de Primera Instancia puede ordenar la descalificación de un representante legal cuando ello aporte a la adecuada marcha de un litigio y sea necesario para la solución justa, rápida y económica de los pleitos. *ORIL v. El Farmer Inc.*, 204 DPR 229, 241 (2020); *Job Connection Center v. Sups. Econo*, 185 DPR 585, 596 (2012); *Meléndez v. Caribbean Int'l News*, 151 DPR 649, 660 (2000). En general, **la orden de descalificación sirve para prevenir violaciones al Código de Ética Profesional** o para evitar conductas disruptivas de los abogados o

abogadas durante el trámite de un pleito. *ORIL v. El Farmer Inc., supra,* pág. 241.

En su parte pertinente, la Regla 5 del Reglamento Notarial, 4 LPRA Ap. XXIV, R. 5, que versa sobre la función dual de abogado y notario, dispone como sigue:

> **La práctica de la profesión de la abogacía puede ser en algunas ocasiones incompatible con la práctica de la notaría**.
>
> El notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.
>
> **El notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de notario en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar de éste**. (Énfasis nuestro).
>
> .      .      .      .      .      .      .      .

En esencia, la Regla 5 del Reglamento Notarial, *supra*, expone la norma general relativa a la incompatibilidad de funciones del abogado y del notario, **cuando ambas participaciones versan sobre un mismo asunto u ocurren en un mismo caso**. Ello así, porque el ejercicio de la abogacía y la notaría implican quehaceres distintos. Por consiguiente, el abogado notario ha de ser riguroso en separar ambas funciones. A esos efectos, el Tribunal Supremo ha expresado que la función dual de abogado y notario procede solamente en acciones *ex parte. In re Avilés Tosado*, 157 DPR 867, 885-886 (2002).

El alto foro ha reiterado que **es incompatible que un abogado combine funciones de notario y abogado en relación con un mismo asunto**. *In re Chiques Velázquez*, 161 DPR 303, 307 (2004), que cita entre otros a *In re Carreras Rovira y Suárez Zayas*, 115 DPR 778 (1984). A modo de ejemplo, en *In re Colón Ramery*, 138 DPR 793 (1995), nuestro Tribunal Supremo reafirmó que un abogado está impedido de **notarizar documentos de su cliente** que estén relacionados con un pleito en el cual éste lo represente y que esté pendiente en los tribunales.

Posteriormente, en *In re Matos Bonet,* 156 DPR 296 (2001), la máxima curia pautó que un notario debe abstenerse de **otorgar documentos públicos relativos a propiedades que sean objeto de un litigio en el cual él participa como abogado**. Estas normas se basan en la protección de la fe pública de la cual el notario es custodio. Jurisprudencia refrendada en *In re Martínez Sotomayor* 189 DPR 492, 501-502 (2013).

En fin, el repudio a la función dual abogado-notario surge porque este último es un "funcionario público usualmente llamado a proteger el derecho de dos o más partes y **aun el de[l] tercero que no comparece ante él**". (Énfasis nuestro). *B. & L., Inc. v. P.R. Cast. Steel Corp.*, 114 DPR 808, 810 (1983). El ejercicio de esa neutralidad está en disputa con la misión del abogado, ya que en esta función debe inclinar la balanza en activa promoción del interés de su representado. *Id.* Ello así, ya que el notario, a diferencia del abogado, está llamado a **ser imparcial en todas sus actuaciones**, toda vez que, mientras el abogado representa los intereses de su cliente; **el notario representa la fe pública**. *In re Avilés Tosado*, 157 DPR 867, 889 (2002).

### III.

En su único señalamiento de error, la parte peticionaria alega que el TPI incidió al descalificar al licenciado Vélez Vera, ya que los otorgantes de la Escritura Pública 21 son todos demandantes, sin conflicto entre ellos ni reclamaciones mutuas. No le asiste la razón.

Según esbozado, el primer párrafo de la Regla 5 del Reglamento Notarial, *supra,* anuncia la incompatibilidad de la función dual de abogado y notario. Sin pretender ser exhaustiva, la disposición plantea determinadas situaciones en que el impedimento es patente. Por ejemplo, el segundo párrafo de la Regla 5 establece que el notario que autorizó un instrumento público "está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra

parte en el documento otorgado ante él". Decididamente, los hechos procesales del caso que atendemos no se ajustan a esa situación.

Empero, el tercer párrafo de la norma reglamentaria dispone palmariamente que "[e]l notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de notario en el mismo caso...". La prohibición responde al interés de prevenir posibles conflictos de intereses o incompatibilidades que puedan dimanar del pleito. Es este escenario precisamente en el que se enmarcan los hechos del caso del título.

Como reseñamos, la *Demanda* sobre partición y adjudicación de comunidad hereditaria se presentó el 2 de diciembre de 2024 por varios miembros comuneros, representados por el licenciado Vélez Vera, en contra de las hermanas Álvarez Reyes, también herederas. Surge del expediente que, durante el trámite del litigio contencioso todavía activo, en que partes contrarias interesan la finca 14518 y guardan discrepancias por el valor de la propiedad —ya que una parte del predio genera rentas de arrendamiento comercial por el uso de estacionamiento de vehículos pesados— el licenciado Vélez Vera autorizó la Escritura Pública 21 el 9 de abril de 2025, cuyos otorgantes, comprador y vendedores, son los demandantes. El negocio jurídico consistió en la compraventa de la titularidad de varias cuotas alícuotas de la finca 14518 sujeta a partición, a cambio de un precio cierto. Ciertamente, con este acto, el licenciado Vélez Vera incurrió en una función dual de abogado y notario en el mismo pleito, el cual no es de naturaleza *ex parte*, lo que está vedado por la Regla 5. Independientemente que no haya conflicto entre los otorgantes del instrumento público aquí autorizado, en aras de proteger la fe pública y la imparcialidad, el Tribunal Supremo ha mandatado a que los notarios se abstengan de autorizar instrumentos públicos sobre propiedades que sean objeto de un pleito en el cual participan como representantes legales. *In re Matos Bonet, supra.*

Por lo tanto, es forzoso concluir que el TPI no erró al descalificar al licenciado Vélez Vera por su rol dual como abogado y notario en un mismo caso, en observancia a la Regla 5 del Reglamento Notarial, *supra*. La descalificación del jurista se realiza como una medida cautelar en este pleito en particular y de ninguna manera constituye una acción disciplinaria, sino el pleno ejercicio del TPI de las prerrogativas que le confiere la Regla 9.3 de Procedimiento Civil, *supra*, con el propósito de propender a una sana administración de la justicia y la marcha adecuada del pleito.

**IV.**

Por los fundamentos expresados, expedimos el auto de *certiorari* y confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones