ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| LYNNETTE Y. GARCÉS RIVERA<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE LA FAMILIA<br><br>Parte Recurrida | KLRA202400381 | *Revisión Judicial,* procedente de la Junta Adjudicativa del Departamento de la Familia, Región de Bayamón<br><br>Caso Núm.:<br>2023 PPSF 00101<br><br>Sobre:<br>Maltrato Institucional |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 15 de noviembre de 2024.

Compareció ante este Tribunal la parte recurrente, Sra. Lynnette Y. Garcés Rivera (en adelante, la "señora Garcés Rivera" o la "Recurrente"), mediante recurso de revisión judicial presentado el 17 de julio de 2024. Nos solicitó la revocación de la *Resolución* emitida y notificada por la Junta Adjudicativa del Departamento de la Familia (en adelante, la "Junta Adjudicativa") el 10 de mayo de 2024. Mediante dicho dictamen, la Junta Adjudicativa confirmó una determinación emitida por la Administración de Familias y Niños del Departamento de Familia (en adelante, "ADFAN"), a través de la cual concluyó que el referido núm. 10447560 sobre maltrato físico y emocional en contra de la señora Garcés Rivera había sido determinado "con fundamento" mientras que el referido núm. 10443273 fue declarado "con fundamento" respecto al maltrato emocional, pero no en cuanto al maltrato físico.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* emitida por la Junta Adjudicativa.

Número Identificador
SEN2024_____

**I.**

El caso de autos tuvo su génesis el 31 de marzo de 2023, cuando la Unidad de Maltrato Institucional del Departamento de la Familia recibió el referido núm. 10447560, mediante el cual se identificaba a la señora Garcés Rivera como presunta maltratante. A través de este escrito, se alegó una situación de maltrato institucional por la tipología de maltrato físico y emocional hacia una menor de dieciséis (16) años, identificada como VOA (en adelante, la "menor VOA") y quien era estudiante de la Recurrente. En vista de lo anterior, el 3 de abril de 2023, la señora Garcés Rivera recibió una "**Notificación de Referido de Maltrato a Menores o Negligencia Institucional**". Una vez concluida la investigación del mencionado referido, el 14 de junio de 2023, se le notificó que el referido número 10447560 sobre maltrato físico y emocional en su contra había sido determinado "con fundamento".

Inconforme con esta decisión, el 26 de junio de 2023, la Recurrente presentó una "**Apelación**" ante la Junta Adjudicativa y solicitó la revocación de la determinación con relación al referido número 10447560. Debido a lo anterior, se celebró una vista adjudicativa que se extendió por dos (2) días. Como prueba testifical, se presentaron los testimonios de: (1) la señora Garcés Rivera, (2) la menor N.R.C., compañera de salón de clases de la menor VOA y (3) la trabajadora social investigadora, Sra. Sirimar Negrón Negrón.

Con fecha del 8 de abril de 2024, el Oficial Examinador, Lcdo. Luis Ramón Ortiz Segura (en adelante, el "licenciado Ortiz Segura"), presentó el "**Informe del Oficial Examinador**" (en adelante, el "Informe") a través del cual detalló que se presentó y se admitió como evidencia documental lo siguiente:

1. Exhibit 1 de la Parte Apelante: Fotografías del salón de clases.

2. Exhibit 2 de la Parte Apelante: Tomas de fotografía más cerca del mismo salón de clases.

3. Exhibit A de la Parte Apelada: Minuta del 14 de junio de 2023.

4. Exhibit B de la Parte Apelada: Documento ADFAN-UMI-25 -A, Notificación sobre el resultado de investigación de maltrato o negligencia institucional a persona nombrada en el referido. Fecha de investigación 9 de marzo de 2023. Investigación 10443273 (Yeylian Rivera, trastorno emocional) /10447560.

5. Exhibit C de la Parte Apelada: Notificación de Referido de Maltrato o Negligencia Institucional en una escuela a persona nombrada en el referido. Fecha 3 de abril de 2023. Número de referido 104447560.

6. Exhibit D de la Parte Apelada: Notificación de Referido de Maltrato o Negligencia Institucional en una escuela a persona nombrada en el referido. Fecha 3 de abril de 2023. Número de referido 10443273.

7. Exhibit E: Informe de Investigación de Referido de maltrato Institucional, de fecha 16 de junio de 2023, suscrito por Sirimar Negrón Negrón y Héctor Peluyera.

Posteriormente, el 10 de mayo de 2024, la Junta Adjudicativa emitió una *Resolución* mediante la cual adoptó el *Informe* y *confirmó* la determinación emitida por la ADFAN, reiterando así que se justificó la determinación relacionada al referido núm. 10447560 sobre maltrato físico y emocional en contra de la señora Garcés Rivera.

Al no estar de acuerdo con la decisión emitida, la Recurrente presentó una "**Moción de Reconsideración**" ante la Junta Adjudicativa. En síntesis, la señora Garcés Rivera argumentó que: (1) no declaró testigo alguno de la Junta Adjudicativa que tuviera conocimiento personal de los alegados hechos imputados; (2) la agencia recurrida no presentó prueba directa ni testigos presenciales de los hechos, sino que solamente descansó en la información contenida del referido número 10447560 sobre maltrato físico y emocional; (3) la trabajadora social investigadora testificó sobre múltiples prueba de referencia, lo cual viola el debido proceso de ley ya que le impidió que se confrontara al declarante en la vista y finalmente, (4) el oficial examinador tomó una decisión a favor de la Junta Adjudicativa, la cual no estaba basada en evidencia sustancial que constara en el expediente, sino en prueba de referencia múltiple que carecía de credibilidad. Evaluada la "**Moción de Reconsideración**", el 11 de junio de 2024, la Junta Adjudicativa declaró la misma "No Ha Lugar".

Inconforme, la señora Garcés Rivera presentó el recurso de revisión judicial que nos ocupa, en el cual planteó que la Junta Adjudicativa cometió el siguiente error:

ERRÓ EN DERECHO LA JUNTA ADJUDICATIVA DEL DEPARTAMENTO DE LA FAMILIA AL CONFIRMAR LA DETERMINACIÓN DE LA UNIDAD DE MALTRATO INSTITUCIONAL MEDIANDO ARBITRARIEDAD, ERROR MANIFIESTO EN LA APRECIACIÓN DE LA PRUEBA Y ABUSO DE DISCRECIÓN YA QUE NO SE CONFIGURARON LOS ELEMENTOS NECESARIOS PARA SU CONFIRMACIÓN.

El 13 de noviembre de 2024, compareció el Departamento de la Familia, por conducto de la Oficina del Procurador General, mediante "**Escrito en Cumplimiento de Resolución**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Camacho Torres v. AAFET, 168 DPR 66, 91 (2006). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Otero v. Toyota, 163 DPR 716, 727 (2005). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". Rivera Concepción v. A.R.Pe, 152 DPR 116, 124 (2000).

La Sección 4.5 de La Ley de Procedimiento Administrativo Uniforme (en adelante, LPAU), Ley Núm. 170 de 12 de agosto de 1988, dispone que: "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación

administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, pueden ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

Por otro lado, en nuestro ordenamiento jurídico la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención

de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia o agencias. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia o de las agencias. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia y las agencias son los foros que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, 153 DPR 280, 291 (2001). No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juzgador de los hechos adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se

concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia o de las agencias se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". Gómez Márquez et al. v. El Oriental, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. Íd.

**C.**

La derogada Ley Núm. 246-2011, según enmendada, conocida como la "Ley para la Seguridad, Bienestar y Protección de Menores" 8 LPRA sec. 1101 *et seq*. (en adelante, "Ley Núm. 246-2011")[1], se aprobó con el firme propósito de asegurar que los procedimientos en los casos de maltrato de menores se atiendan con diligencia, dejando a un lado la interpretación liberal a favor de la reunificación familiar y enfocándose en lograr la seguridad y protección, al tiempo que perseguía garantizar el bienestar físico, emocional y psicológico del menor, por encima de

---

[1] Reconocemos que la Ley Núm. 246-2011, *supra*, fue derogada y sustituida por la Ley Núm. 57-2023, mejor conocida como la "Ley para Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores", 8 LPRA sec. 1641 *et seq*. (en adelante, "Ley Núm. 57-2023"). Sin embargo, como el caso de autos tuvo su génesis el 31 marzo del 2023 y la Ley Núm. 57-2023, *supra*, fue aprobada en mayo de dicho año, el estatuto que se estará utilizando para el análisis del caso será la ley vigente al momento de los hechos, entiéndase, la Ley Núm. 246-2011, *supra*.

cualquier otro interés. *Véase*, Exposición de Motivos de la Ley Núm. 246-2011, *supra*. Es por ello que la Ley Núm. 246-2011, *supra*, promueve la protección de los menores de edad de cualquier forma de maltrato o negligencia que provenga de sus padres o de personas que lo tengan bajo su cuido, así como de instituciones responsables de proveerles servicios. Íd.

Cónsono con lo anterior, el Artículo 2 de la Ley Núm. 246-2011, *supra*, dispone que los menores "tienen derecho a la protección contra el maltrato y a cualquier abuso por parte de sus padres, de sus representantes legales, de las personas responsables de su cuidado, así como de los miembros de su grupo familiar, escolar y comunitario". 8 LPRA sec. 1101n. Por su parte, el Artículo 3 (x) de dicho estatuto define "maltrato institucional" como:

> **[C]ualquier acto en el que incurre** un operador de un hogar de crianza o **cualquier empleado o funcionario de una institución pública** o privada que ofrezca servicios de cuido durante un día de veinticuatro (24) horas o parte de éste o **que tenga bajo su control o custodia a un menor para su cuido, educación,** tratamiento o detención, **que cause daño o ponga en riesgo a un menor de sufrir daño a su salud e integridad física, mental y/o emocional,** incluyendo, pero sin limitarse, el abuso sexual; la trata humana, incurrir en conducta obscena y/o utilización de un menor para ejecutar conducta obscena, conocido o que se sospeche o que sucede como resultado de la política, prácticas y condiciones imperantes en la institución de que se trate; que se explote a un menor o se permita que otro lo haga, incluyendo pero sin limitarse a utilizar al menor para ejecutar conducta obscena, con el fin de lucrarse o de recibir algún otro beneficio. 8 LPRA sec. 1101 (x) (énfasis suplido).

Mientras que los incisos (k) y (l) de la Ley Núm. 246-2011, *supra*, definen "daño físico" y "daño mental o emocional", respectivamente, como:

> (k) "Daño Físico"- cualquier trauma, lesión o condición no accidental, incluso aquella falta de alimentos que, de no ser atendida, podría resultar en la muerte, desfiguramiento, enfermedad o incapacidad temporera o permanente de cualquier parte o función del cuerpo, incluyendo la falta de alimentos. Asimismo, el trauma, lesión o condición pueden ser producto de un solo episodio o varios.

> (l) "Daño Mental o Emocional" - el menoscabo de la capacidad intelectual o emocional del menor dentro de lo considerado normal para su edad y en su medio cultural. Además, se considerará que existe daño emocional cuando hay evidencia de que el menor manifiesta en forma recurrente o exhibe conductas tales como: miedo, sentimientos de desamparo o desesperanza, de frustración y fracaso, ansiedad, sentimientos de inseguridad, aislamiento, conducta agresiva

o regresiva o cualquier otra conducta similar que manifieste la vulnerabilidad de un menor en el aspecto emocional. 8 LPRA sec. 1101 (k) y (l).

Finalmente, es menester tener presente que, al adjudicar controversias relacionadas con menores, los tribunales debemos guiarnos por el principio de asegurar el bienestar y los mejores intereses de éstos. Zapata et al. v. Zapata et al., 156 DPR 278, 289 (2002). El mejor bienestar del menor significa el "balance entre los diferentes factores que pueden afectar la seguridad, salud, bienestar físico, mental, emocional, educativo, social y cualquier otro dirigido a alcanzar el desarrollo óptimo del menor". 8 LPRA sec. 1101 (y).

**III.**

La señora Garcés Rivera sostiene que la Junta Adjudicativa erró al confirmar la determinación de maltrato físico y emocional efectuada por la Unidad de Maltrato Institucional, bajo el fundamento de que el oficial examinador apreció erróneamente la prueba presentada y que se le violentó su derecho a un debido proceso de ley, pues en el expediente no surge evidencia sustancial que justifique la *Resolución* recurrida.

Surge del expediente ante nuestra consideración que el 31 de marzo de 2023, la Unidad de Maltrato Institucional del Departamento de la Familia recibió el referido núm. 10447560 sobre maltrato físico y emocional, a través del cual se identificó a la señora Garcés Rivera como presunta maltratante. Así las cosas, el 14 de junio de 2023 se le notificó que dicho referido había sido determinado "con fundamento". Insatisfecha con esta decisión, la Recurrida apeló la determinación de la ADFAN ante la Junta Adjudicativa. A tenor con lo anterior, el 12 de febrero de 2024 se llevó a cabo la vista administrativa. Allí, testificaron bajo juramento las siguientes personas: (1) la señora Garcés Rivera, (2) la menor N.R.C., y (3) la trabajadora social investigadora del caso, la Sra. Sirimar Negrón Negrón. En detalle, la Sra. Sirimar Negrón Negrón declaró, entre otras cosas, lo siguiente:

GSC: A base de sus funciones, qué usted incluyó luego de la Investigación, ¿concluyó luego de la investigación en este caso?

SNN: **Luego de la investigación de este caso se pudo validar Maltrato Emocional y Maltrato Físico, por parte de la señora Garcés hacia los menores, menor (1); menor dos (2); menor tres (3) y menor cuatro (4)**.

[…]

GSC: ¿Para usted llegar a esa conclusión, qué usted tuvo que hacer?

SNN: Entrevistar a menores muestras, Colaterales Empleados, Colaterales Profesionales.

[...]

SNN: La menor alega que la señora Garcés hacía comentarios despectivos. Es en serio que me interrumpes, no puedo creer que tengas familiares en la escuela trabajando aquí. Ante la duda de esta menor en cuanto a la materia que presentaba, la misma no se la contestaba. Había expresado que la señora Garcés le había dicho, no te me acerques. Debido a esto, la menor fue a recibir servicios psicológicos, ya que la menor presenta Trastorno Generalizado de Ansiedad.

GSC: Continúe

SNN: Se entrevista Colateral Familiar, quien valida la misma versión ofrecida por la menor.

GSC: Continúe con respecto a las otras entrevistas que usted hizo, si alguna, en torno a esto.

SNN: Se entrevistó a otro menor muestra, quien valida que la maestra habla comentarios despectivos, que los comparan con estudiantes de Educación Especial, que ellos sí hacen caso y ellos no.

[…]

**Entrevisto a Colateral Profesional quien valida que la menor tuvo descompensaciones debido al trato de la señora Garcés hacia la menor**.

GSC: ¿Cuáles eran las expresiones que decía la señora Garcés en el salón de clases para que ella se sintiera así?

SNN: No aclarándole las dudas, es en serio que me molestas, perdóname, discúlpenme, eso no, es en serio que me interrumpes, cómo es posible que tengas familiares aquí. Hacia comparación con menores de Síndrome de Down, menores con discapacidad, haciendo comparación al salón de clases. No obstante, a la menor tener trastorno de ansiedad es susceptible.

[…]

SNN: Entrevisté informante. Informante alega que los hechos ocurrieron en el salón de clase que menor expresa que estaban dialogando del Sistema Circulatorio, la señora Garcés estaba hablando del tema del Sistema Circulatorio y la menor alza la mano, responde y entonces se desprende del informante que la señora Garcés la manda a la pizarra a realizar un ejercicio y que quería reconocer a la menor, por haber contestado sobre el Sistema Circulatorio, no obstante, que la empuja y esta menor cae encima de otro de los menores. Y que no ocurrió en una ocasión, sino que continúo.

[…]

**GSC: ¿Quién empuja a la menor?**
**SNN: La señora Garcés**
**GSC: ¿Dónde la empuja?**
**SNN: En el salón de clases.**
GSC: ¿En dónde, por qué parte la empuja?
SNN: Los brazos, el hombro y la espalda.

> GSC: Para fines de la grabación, con ambas manos da de izquierda a derecha de manera empujando. ¿Mie con quién usted, si alguien pudo corroborar esta versión?
> SNN: La menor víctima y varias menores muestras.
> GSC: ¿Cuántos en total?
> SNN: Tres (3).[2]

Tras el desfile de la prueba presentada en la vista administrativa, la Junta Adjudicativa emitió una *Resolució*n en la que reiteró que se justificaba la determinación emitida por la ADFAN respecto al referido núm. 10447560 sobre maltrato físico y emocional en contra de la Recurrente.

Conforme hemos adelantado en los acápites anteriores, la Ley Núm. 246-2011, *supra*, fue promulgada con el fin ulterior de asegurar que los procesos en los casos de maltrato de menores se atiendan con eficiencia, apartando la interpretación liberal que favorece la reunificación familiar y centrándose en obtener la seguridad de los menores, así como su bienestar físico emocional y psicológico. Cónsono con lo anterior, dicho estatuto impulsa la protección de los menores de edad frente a cualquier tipo de maltrato o negligencia que provenga de personas que lo tengan bajo su cuidado, incluyendo a las instituciones responsables de proveerles servicios. Así, el término de maltrato institucional es definido como cualquier actuación en la que incurre un empleado o funcionario de una institución pública que tenga bajo su control o custodia a un menor para su cuido o educación que cause daño o ponga en riesgo al menor de sufrir daño a su salud e integridad, física, mental y/o emocional.

Luego de estudiar detenidamente la transcripción de la prueba oral (TPO) y todos los documentos que forman parte del legajo apelativo, concluimos que no existe base para acoger la invitación de la Recurrente a revocar la *Resolución* emitida por la Junta Adjudicativa. Contrario a lo argumentado por la señora Garcés Rivera, el expediente contiene prueba sustancial de la cual se puede concluir que, en efecto, la Recurrente incurrió en conducta constitutiva de maltrato físico y emocional, según están ambos conceptos definidos por la Ley Núm. 246-2011, *supra*, y la jurisprudencia interpretativa. Ello se desprende con meridiana claridad de

---

[2] *Véase,* Transcripción de la vista administrativa del 12 de febrero de 2024, págs. 12, 13, 19, 21 y 22.

la prueba que desfiló durante la vista y que hemos citado en la presente *Sentencia*. La prueba vertida durante la vista celebrada comprobó que la menor en controversia sufrió descompensaciones, a consecuencia del trato que le profirió la Recurrente. Dicha realidad fue corroborada por varias entrevistas llevadas a cabo por parte de la trabajadora social encargada y cuyos hallazgos denotaron que la señora Garcés Rivera tenía sus capacidades protectoras debilitadas. De igual manera, la TPO revela que la menor fue objeto de maltrato físico efectuado por la Recurrente, por medio de contacto que fue catalogado como "no adecuado ni permitido". Valga destacar que dicha realidad fue confirmada por varias personas que fueron entrevistadas durante el procedimiento que nos ocupa.

Coincidimos con la apreciación de la prueba efectuada por el oficial examinador, a los efectos de que el referido en controversia fue corroborado por la perito en trabajo social. Además, la evidencia estableció –sin ambages– que por los mismos hechos que motivaron el aludido referido, se expidió una Orden de Protección en contra de la Recurrente, al amparo también de la Ley Núm. 246-2011, *supra.* Somos de la opinión de que la Recurrente no logró minimizar o contradecir la prueba que presentó el Departamento de la Familia durante la vista y que estuvo dirigida a que se sostuviera la determinación "Con fundamento" de maltrato físico y emocional. Claramente, el expediente demuestra que el Departamento de la Familia presentó evidencia que estableció que la Recurrente incurrió en la conducta que se le imputó y que culminó con el referido de maltrato que nos ocupa.

En el presente caso medió prueba relevante que en la mente razonable de cualquier juzgador es indicativa de la conducta imputada a la Recurrente. Esta última no cumplió con su obligación de presentar evidencia necesaria que nos permitiera, como cuestión de derecho, descartar la presunción de corrección de la *Resolución* recurrida. En otras palabras, sostenemos que la señora Garcés Rivera no cumplió con el estándar necesario para impugnar la determinación administrativa en controversia. A nuestro juicio, tampoco logró presentar otra prueba que

redujera o menoscabara el valor probatorio de la evidencia impugnada, hasta el punto de que estuviéramos imposibilitados de concluir que la determinación de la Junta Adjudicativa fue razonable, de acuerdo con la totalidad de la prueba que tuvo ante su consideración.

Así pues, al efectuar nuestra función revisora, no hallamos hechos adjudicados con pasión, prejuicio o parcialidad, o que nos permitiera concluir que la Junta Adjudicativa cometió un error manifiesto. En fin, estamos imposibilitados de concluir que el foro recurrido actuó movido por inclinaciones personales de tal intensidad que adoptó posiciones, preferencias o rechazos con respecto a las partes o causas que no admiten cuestionamiento.

Cónsono con lo anterior, entendemos que, de un análisis de la totalidad de la evidencia, no se cometió un error que nos llevara a determinar que las conclusiones de la *Resolución* recurrida estuvieran en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. En otras palabras, no incurrió en error manifiesto la Junta Adjudicativa cuando al apreciar la prueba presentada, pues sus conclusiones no se distanciaron de la realidad fáctica o fueron inherentemente imposibles o increíbles.

**IV.**

Por los fundamentos antes expresados, los que hacemos formar parte de este dictamen, *confirmamos* la *Resolución* emitida por la Junta Adjudicativa del Departamento de la Familia.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones