Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| **IXSIA PÉREZ CASIANO** Recurrente v. **DEPARTAMENTO DE LA FAMILIA** Recurridos | TA2025RA00065 | **REVISIÓN ADMINISTRATIVA** Procedente del Departamento de la Familia Junta Adjudicativa Oficina Regional de Caguas Caso Núm. **2025 PPSF 00050** Sobre: **Maltrato Institucional con Fundamento** |
|---|---|---|

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 17 de diciembre de 2025.

Comparece ante nos, Ixsia Pérez Casiano, en adelante, Pérez Casiano o recurrente, solicitando que revisemos la *"Resolución"* de la Junta Adjudicativa del Departamento de la Familia, en adelante, Junta Adjudicativa, notificada el 9 de junio de 2025. En la misma, se denegó la apelación de la recurrente.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen recurrido.

### I.

Pérez Casiano es maestra de Educación Secundaria del Departamento de Educación de Puerto Rico, en adelante, Departamento de Educación, hace más de veinte (20) años. En el año 2021 comenzó a laborar en la Escuela Antonio Fernós Isern, en el Municipio de San Lorenzo.

Por una serie de eventos acaecidos durante los meses de noviembre del año 2023 y enero del año 2024, la Unidad de Maltrato Institucional, en adelante, UMI o recurrido, de la Administración de Familias y Niños, en adelante, ADFAN, recibió tres (3) referidos de maltrato que señalaron a Pérez Casiano como la causante.

El *primero* de estos referidos fue el número 10486193, del 17 de noviembre de 2023. El mismo aduce que la apelante maltrató a una estudiante de catorce (14) años, al negarse a exhibir una bandera que esta realizó, por entender que lucía fea. Este intercambió resultó en un careo entre las partes involucradas, la Directora de la Escuela y familiares de la menor de edad.

El *segundo* de los referidos es identificado con el número 10487520, fechado el 28 de noviembre de 2023. Del mismo surge un altercado entre la apelante y unas estudiantes, en el que Pérez Casiano alegadamente incurrió en una actitud agresiva.

El *último* de estos referidos, número 10495778, fue presentado el 24 de enero de 2024. Del escrito del referido se desprende que la apelante, molesta con uno de sus estudiantes, golpeó un escritorio y le rompió un trabajo al menor de edad involucrado. Se añadieron a estas alegaciones algunas expresiones de la maestra, que incluyen palabras soeces.[1]

Respecto a este último referido, la madre del menor de edad involucrado acudió al Tribunal de Primera Instancia, Sala de Caguas, el 25 de enero de 2024, para solicitar una Orden de Protección a favor de su hijo, al amparo de la Ley para la Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores, Ley Núm. 57-2023, 8 LPRA sec. 1641 *et seq*, en adelante, Ley de Maltrato a Menores. El Tribunal expidió la misma ex parte, y posterior a la vista

---

[1] Los hechos hasta aquí reseñados surgen de la copia certificada del Expediente administrativo, el cual fue elevado ante este Tribunal el 2 de septiembre de 2025.

final, concedió la misma contra la apelante. Pérez Casiano impugnó ante esta Curia la orden de protección en su contra, quien a su vez, revocó la misma.[2]

En respuesta a los sucesos en cuestión, Pérez Casiano fue reubicada en el Centro de Servicios de Educación Especial del Municipio de Las Piedras, *como medida cautelar*, el 25 de enero de 2024. Ahora bien, el 29 de enero de 2024, comenzó a cursar una investigación de la UMI, efectuada por la Trabajadora Social Investigadora, Carmen Figueroa Santana, en adelante, Figueroa Santana. Surge que la persona encargada de la misma compareció al plantel escolar el 2 de febrero de 2024, para visualizar los salones de clase en donde alegadamente ocurrieron los hechos. Durante la investigación, se hicieron múltiples entrevistas, se evaluó la escuela y los recursos con los que cuenta para responder a las necesidades del estudiantado.

Concluida la investigación de la UMI el 20 de agosto de 2024, se radicó ante la agencia el *"Informe de Investigación de Maltrato Institucional o Negligencia Institucional en Escuela Superior Vocacional Antonio Fernós en San Lorenzo"*, el cual fue recibido el 6 de septiembre de 2024. El mencionado informe concluyó que la investigación validó las alegaciones de maltrato, en la modalidad emocional, y que hubo abuso de poder. Se recomendó, por lo tanto, que la administración asegurara la protección de los menores involucrados, y se aplicaran las medidas y protocolos necesarios para garantizar este fin.

El 12 de septiembre de 2024, la apelante fue citada por el recurrido, Departamento de la Familia, donde se le leyó la *"Notificación Sobre Resultado de Investigación de Maltrato o Negligencia Institucional a Persona Nombrada en el Referido"*. De este

---

[2] KLAN202400265.

surgió que hubo una determinación de *"Con Fundamento"* sobre cada alegación de maltrato emocional.

Ahora bien, inconforme con la determinación de la UMI, Pérez Casiano radicó una *"Apelación"* ante la Junta Adjudicativa el 27 de septiembre de 2024.[3] En su escrito, adujo que la determinación apelada fue arbitraria y caprichosa, por lo que solicitó el sobreseimiento de la determinación administrativa en su contra.[4] Producto de esta apelación, se celebraron tres (3) vistas administrativas los días 16 de enero de 2025, 20 de marzo de 2025 y 25 de marzo de 2025. Durante estas vistas, testificaron la Trabajadora Social, Figueroa Santana, y la apelante Pérez Casiano.

El 1 de mayo de 2025, la Oficial Examinadora que presidió las vistas administrativas, sometió un informe sobre el caso ante la Junta Adjudicativa, en el que recomendó confirmar la acción notificada a la recurrente por la UMI. Así, la Junta Adjudicativa emitió una *"Resolución"* el 9 de junio de 2025, en la que acogió la recomendación de la Oficial Examinadora.

Inconforme con este resultado, Pérez Casiano presentó un *"Recurso de Revisión"* en el que señaló los siguientes como errores en derecho cometidos por la Junta Adjudicativa:

> **PRIMER ERROR: Validó los impugnados referidos de maltrato emocional, que la agencia recurrida notificó, con un contenido inapropiado, pues carecen de información detallada, acerca de los hechos constitutivos y fundamentos del**

---

[3] Los hechos hasta aquí reseñados surgen de la copia certificada del Expediente administrativo, el cual fue elevado ante este Tribunal el 2 de septiembre de 2025. Ahora bien, por constituir parte del Expediente Administrativo, hacemos constar que el 27 de septiembre de 2024, el Departamento de Educación remitió a Pérez Casiano un misiva, en la que se le informó que la Oficina de Investigación de Querellas Administrativas de la referida agencia informó que esta había incurrido en conducta constitutiva de maltrato institucional. La carta expuso una serie de hechos perpetrados por la apelante, sobre los cuales se basó la determinación de maltrato. Además, se desglosó la normativa reglamentaria que Pérez Casiano alegadamente incumplió. Se le advirtió, por lo pronto, sobre su derecho a solicitar una vista administrativa formal para mostrar causa por la cual no se le deba amonestar, suspender o destituir de su trabajo.

[4] Los hechos hasta aquí reseñados surgen de la copia certificada del Expediente administrativo, el cual fue elevado ante este Tribunal el 2 de septiembre de 2025.

**comportamiento ilícito imputado a la parte recurrente.**

**SEGUNDO ERROR: De modo parcializado y desbalanceado, le dio credibilidad al testimonio estereotipado, mendaz y malintencionado de la TS Figueroa, el cual ciertamente constituyó prueba de referencia múltiple e incumplió con los criterios periciales de una investigación de trabajo social, con el consecuente resultado de que la recurrente se encuentra expuesta a alegados hechos de maltrato emocional contra estudiantes suyos, incluso doblemente, en cuanto a Jeremy González.**

**TERCER ERROR: Determinó restrictivamente, a base de una improcedente presunción de corrección, que la parte recurrente incurrió en la conducta ilegal imputada, aunque el testimonio falso de la TS Figueroa fue desmentido, por la parte recurrente.**

Mediante *"Resolución"* del 13 de agosto de 2025, concedimos a la parte recurrida hasta el 26 de agosto de 2025 para presentar su posición respecto al recurso. Además, mediante otra *"Resolución"* del 18 de agosto de 2025, establecimos los términos para que las partes presenten y se expresen sobre la transcripción de la prueba oral, así como las condiciones para que esta Curia acoja la misma.

El 20 de agosto de 2025, la parte recurrida presentó una *"Solicitud de Desestimación"* ante nos, por falta de un Apéndice completo en el recurso de epígrafe. Al día siguiente, solicitamos a la agencia recurrida que elevara el expediente administrativo, conforme a la Regla 77(c) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 102, 215 DPR ___ (2025). Posteriormente, el 27 de agosto de 2025, con relación a la solicitud de desestimación ante nuestra consideración, le indicamos a la parte recurrida que se refiriera a la *"Resolución"* emitida por este Foro el 21 de agosto de 2021, en la que solicitamos a la Agencia recurrida, la elevación del expediente del caso. Finalmente, el 2 de septiembre de 2025, el Departamento de

la Familia sometió una copia certificada del expediente administrativo ordenado.

Por su parte, Pérez Casiano, luego de una breve prórroga, radicó ante nos un escrito informativo para indicar que estaría presentando la transcripción de la prueba oral, en formato impreso, en la Secretaría de nuestro Tribunal. La parte recurrida presentó sus objeciones a la misma el 26 de septiembre de 2025, y el 24 de octubre de 2025, la recurrente presentó su *"Alegato Suplementario"*.

Finalmente, mediante *"Resolución"* del 24 de octubre de 2025, adoptamos las correcciones a la transcripción de la prueba oral presentada, y concedimos a la parte recurrida hasta el 24 de noviembre de 2025 para presentar su alegato en oposición.

## II.

### A. Revisión de las Determinaciones Administrativas

Sabido es que, en nuestro estado de derecho actual, las decisiones, órdenes y resoluciones finales de los organismos administrativos están sujetas a la revisión del Tribunal de Apelaciones. Artículo 4006 (c) de la Ley de la Judicatura de Puerto Rico, Ley Núm. 201-2003, 4LPRA sec. 24; Ley Núm. 38-2017 Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, 3 LPRA secs. 9671 y 9672; Regla 56 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamemnto TA,* 2025 TSPR 42, pág. 75, 215 DPR ___ (2025); *Simpson, Passalaqua v. Quiros, Betances,* 214 DPR 370, 377 (2024); *Miranda Corrada v. DDEC, et al.,* 211 DPR 738, 745 (2023); *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022); *AAA v. UIA,* 200 DPR 903, 910 (2018). El objetivo principal de la revisión judicial consiste en auscultar si la agencia administrativa actuó de conformidad a las facultades que fueron conferidas por Ley. *Ruiz Matos v. Dept. Corrección,* 213 DPR 291, 296 (2023); *Hernández*

*Feliciano v. Mun. Quebradillas*, 211 DPR 99, 113-114 (2023); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022).

De ordinario, estas revisiones proceden al adjudicarse finalmente todas las controversias en consideración de la agencia y al agotarse todos los remedios administrativos disponibles para un litigante. *Buxó Santiago v. ELA et als.*, 2024 TSPR 130, 215 DPR __ (2024); *Miranda Corrada v. DDEC, et al.*, supra, pág. 746; *Pérez López v. Dpto. Corrección*, supra, pág. 672; *Fonte Elizondo v. FR Conts.* 196 DPR 353, 358 (2016). Además, la facultad de cuestionar una determinación administrativa forma parte del debido proceso de ley, el cual es un derecho con rango constitucional. *ACT v. Prosol et als.*, 210 DPR 897, 908 (2022); *Asoc. Condomines v. Meadows Dev.*, 190 DPR 843, 847 (2014).

Empero, huelga decir que "la revisión judicial no es equivalente a una sustitución automática del criterio e interpretación del ente administrativo." *Hernández Feliciano v. Mun. Quebradillas,* supra, págs. 115-116; *Capó Cruz v. Jta. Planificación, et al.*, 204 DPR 581, 591 (2020). A tenor con ello, el foro apelativo debe hacer distinción entre los asuntos consistentes a la discreción o pericia de la agencia, y las controversias relacionadas a la interpretación estatutaria, en las cuales los tribunales son especialistas. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 116; *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).

El foro judicial debe conceder deferencia a las decisiones de las agencias administrativas por razón de la experiencia y el conocimiento especializado que estas poseen sobre los asuntos que se les han delegado. *Katiria's Café Inc. v. Mun. Aut. San Juan,* 2025 TSPR 33, 215 DPR __ (2025); *Jusino Rodríguez v. Junta de Retiro,* 2024 TSPR 138, 215 DPR __ (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024); *Voilí Voilá Corp. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Hernández Feliciano v. Municipio de*

*Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, supra, págs. 88-89; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Cónsono con lo anterior, los dictámenes administrativos están revestidos de una presunción de legalidad y corrección, la cual subsiste, mientras que la parte que los impugna no produzca suficiente evidencia para derrotarla. *Katiria's Café Inc. v. Mun. Aut. San Juan*, supra; *Transp. Sonell v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs Bank*, supra; *Voilí Voilá Corp. v. Mun. Guaynabo*, supra; *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, supra, pág. 89; *Rolón Martínez v. Supte. Policía*, supra, pág. 35.

Sin embargo, nuestro más Alto Foro recientemente dispuso, acogiendo así la normativa que impera en el Foro Federal, que la deferencia administrativa debida *no se extiende a las determinaciones de derecho. Vázquez, et als. vs. DACo*, 2025 TSPR 56, 215 DPR ___ (2025). Es decir, la deferencia de los foros judiciales a las agencias administrativas continua vigente para las determinaciones de hecho que estas realicen. Sin embargo, conforme al cumplimiento de las facultades revisoras sobre el derecho, estamos instruidos por nuestro Tribunal Supremo a revisar, sin los amarres de la deferencia, las determinaciones de derecho de las agencias administrativas. *Id.* Por su parte, la LPAUG, supra, sec. 9675 dispone que "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". Por todo lo cual, el precitado caso reza de la siguiente manera:

> [l]a interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, *será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.*

*Vázquez, et als. vs. DACo,* supra.

(Énfasis suplido).

Cuando una parte desee impugnar las determinaciones de hecho de una agencia que estén asentadas en la prueba oral que desfiló ante esta, nuestro Tribunal Supremo ha establecido que "es imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista". *Camacho Torres v. AA-FET,* 168 DPR 91, 92 (2006). Véase, además, *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 129 (2019).

Así, los tribunales, para lograr su encomienda, deberán evaluar los siguientes tres (3) aspectos: 1) si el remedio concedido fue el apropiado; 2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y 3) si se sostienen las conclusiones de derecho realizadas por la agencia. *Katiria's Café Inc. v. Mun. Aut. San Juan,* supra; *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 115; *OEG* v. *Martínez Giraud,* supra, pág. 89; *Moreno Lorenzo y otros v. Depto. Fam.,* 207 DPR 833, 839-840 (2021); *Capó Cruz v. Jta. Planificación et al.,* supra, pág. 591.

## B. Ley de Maltrato a Menores

Las controversias relacionadas al bienestar de un menor están revestidas del más alto interés público. *Pueblo en interés de los menores RPS, MPS y CJNS,* 134 DPR 123 (1993). En Puerto Rico existe una clara política pública de velar por el bienestar y los mejores intereses de los menores de edad. *Pena v. Pena,* 152 DPR 820, 833 (2000); *Marrero Reyes v. García Ramírez,* 105 DPR 90, 104 (1976); R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada,* Vol. II, San Juan, Programa de EJC de la Universidad Interamericana de Puerto Rico, 2002, pág. 1310.

A esos fines, se creó la Ley de Maltrato a Menores, *supra*. En su Exposición de Motivos, el estatuto en cuestión establece que las protecciones que ofrece el mismo abarcan no solo el bienestar de los menores en asuntos intrafamiliares, *sino institucionales* también. Respecto a esto último, el Legislador dispuso que:

> Para garantizar el fiel cumplimiento con la política pública dispuesta en esta ley, las agendas y municipios del Estado Libre Asociado de Puerto Rico prestaran atención prioritaria a las situaciones de menores en riesgo de ser ubicados en cuidado sustituto, riesgo inminente o que hayan sido víctimas de maltrato, **maltrato institucional**, negligencia o negligencia institucional que advengan a su conocimiento. Tendrán el deber de coordinar sus esfuerzos entre si cuando se requiera la prestación de servicios relacionados con la identificación, prevención o tratamiento de los menores que se encuentren en estas circunstancias.

> (Énfasis suplido).

La precitada Exposición de Motivos detalla las responsabilidades, a la luz de la Ley de Maltrato a Menores, *supra*, que las familias y el Estado tienen con los menores. Así, dispone que tanto las agencias como los Municipios tiene el deber de "[i]dentificar e informar situaciones al Departamento de la Familia donde exista o se sospeche que la seguridad de un menor se encuentra en riesgo, exista maltrato, *maltrato institucional*, negligencia o *negligencia institucional* para su investigación y correspondiente intervención, según se dispone en esta ley".

Incluso, el estatuto distingue las responsabilidades individuales de ciertas agencias, como el Departamento de Educación y el Departamento de la Familia. Disponiendo, a su vez, un deber de colaborar para desarrollar protocolos que faciliten el intercambio interagencial de información relevante al maltrato de menores. Artículo 5, Ley de Maltrato de Menores, *supra*, sec. 1652.

Ahora bien, Artículo 3 de la Ley de Maltrato a Menores, supra, sec. 1643-bb, define el Maltrato Institucional de la siguiente manera:

Cualquier acto en el que incurre un operador de un hogar de crianza o cualquier empleado o funcionario de una institución pública o privada que ofrezca servicios de cuido durante un día de veinticuatro (24) horas o parte de este, o que tenga bajo su control o custodia a un menor para su cuido, educación preescolar, primaria, o superior, tratamiento o detención, que cause daño o ponga en riesgo a un menor de sufrir daño a su salud e integridad física, mental o emocional, incluyendo, pero sin limitarse, el abuso sexual, la trata humana, incurrir en conducta obscena o utilización de un menor para ejecutar conducta obscena, conocido o que se sospeche o que sucede como resultado de la política, prácticas y condiciones imperantes en la institución de que se trate; que se explote a un menor o se permita que otro lo haga, incluyendo pero sin limitarse a utilizar al menor para ejecutar conducta obscena, con el fin de lucrarse o de recibir algún otro beneficio.

Por ser relevante al caso de autos, nos referimos al Manual de Investigación e Intervención en referidos y casos de Maltrato y Negligencia Institucional, en adelante, Manual,[5] que define el Maltrato Emocional o Psicológico de la siguiente manera:

Dentro del contexto *institucional*, el maltrato emocional se evidencia cuando las personas responsables por el cuidado del niño(a), mediante sus actos de omisión o comisión, someten al niño(a) a un ambiente negativo en el cual es tratado de forma injusta, se ataca su sentido de dignidad y valor propio. ***El maltrato emocional puede consistir en el uso constante de palabras obscenas o vulgares, apodos despectivos, insultos, amenazas, degradar o ridiculizar al menor*** atacando su auto-imagen y valor propio, agravándose esto cuando es en público".

Manual, supra, Capítulo IV-B, ADFAN-PFF-2007-029, pág. 170.
(Énfasis suplido).

---

[5] Dicho Manual se aprobó en virtud de las disposiciones de la Ley Núm. 177, derogada, a su vez, por la Ley Núm. 246. En específico, véase, el Artículo 81 de la Ley Núm. 246.

De otro lado, el Manual también establece el procedimiento a seguir en cuanto a los referidos por maltrato institucional. Según dispone, la determinación del referido será *Con Fundamento* cuando se tiene suficiente evidencia para concluir que un menor ha sido víctima de maltrato o negligencia o está en riesgo de serlo. Manual, *supra,* Subsección 700.2. De igual manera señala que, aunque no se corrobora la información específica indicada en el referido, se determina en la investigación que se ha incurrido en maltrato o negligencia hacia el menor, por lo que la investigación resulta *Con Fundamento. Íd.*

Finalmente, es menester tener presente que, al adjudicar controversias relacionadas con menores, los tribunales debemos guiarnos por el principio de asegurar el bienestar y los mejores intereses de éstos. *Zapata et al. v. Zapata et al.,* 156 DPR 278, 289 (2002).

### III.

La parte recurrente comparece ante nos haciendo *tres (3) señalamientos de error,* mediante los cuales, en esencia, impugna la apreciación de la prueba realizada por el Departamento de la Familia en su caso. El recurrido determinó, y la Junta Adjudicativa confirmó, que Pérez Casiano incurrió en conducta constitutiva de maltrato emocional. Por esto, la recurrente aduce que el recurrido creyó el testimonio estereotipado, mendaz y malintencionado de la Trabajadora Social que investigó las alegaciones en su contra. *No le asiste la razón.*

Reiteramos que en las revisiones administrativas, este Foro está llamado a otorgar deferencia con relación a las determinaciones de hechos. Entendemos, por lo tanto, que en el caso de marras, estamos emplazados a ello, ya que lo impugnado por la recurrente descansa sobre la apreciación que realizó la agencia recurrida sobre la prueba desfilada. En ausencia de prueba que mueva nuestro

criterio a lo contrario, confirmamos el dictamen recurrido, por entender que no se cometió abuso de discreción, error o perjuicio en la apreciación sobre la prueba desfilada en la vista, específicamente aquella relevante al testimonio de la Trabajadora Social investigadora. Veamos.

Contra la recurrente pesan tres (3) referidos por eventos suscitados entre los meses de noviembre del año 2023 y enero del año 2024. Por ello, el recurrido incoó una investigación y designó a una Trabajadora Social investigadora para que inquiriera sobre las alegaciones de maltrato institucional, en su modalidad de maltrato emocional. En la vista celebrada, esta testificó sobre la investigación y las entrevistas realizadas durante la misma, además de sus conclusiones. Esta limitó sus declaraciones al contenido del informe rendido. Incluso, las partes estipularon la admisibilidad del informe de esta "sujeto al valor probatorio que le dé la Junta" al contenido del mismo.[6]

Por ello, entendemos improcedente las alegaciones de la recurrente, referente a cuestiones de admisibilidad y prueba de referencia. En primera instancia, estamos ante un proceso administrativo en el que las reglas de evidencia no obligan. Además, el testimonio de la Trabajadora Social se limitó, en todo momento, a lo que obraba en su informe, cuya admisibilidad estaba estipulada. Ahora bien, el valor probatorio del mismo estaba sujeto, según establecieron las partes, a la evaluación de la Junta Adjudicativa, a la que ahora otorgamos deferencia.

No obstante, no nos adherimos ciegamente a las conclusiones de hecho y de derecho realizada por la Junta Adjudicativa. Este Foro ha evaluado detenidamente el expediente en autos y la transcripción de la prueba oral. Por ello, concluimos que no erró la parte recurrida.

---

[6] Transcripción de la prueba oral, pág. 26.

Con relación al testimonio de la Trabajadora Social, esta comenzó testificando sobre sus hallazgos en el **referido número 10495778**.[7] Indicó haber entrevistado al menor objeto del alegado maltrato, y explicó lo que este le narró. Además, sostuvo que entrevistó a la persona encargada del menor de edad, cuatro (4) menores de edad testigos del evento y a la recurrente.[8] Aunque Pérez Casiano negó casi todas las alegaciones en su contra, excepto la de romper el trabajo del menor frente al salón, los demás testigos corroboraron la versión del menor afectado.

Por otro lado, en cuanto al **referido número 10486193**, la Trabajadora Social entrevistó a la estudiante objeto del referido, un familiar de esta, la Trabajadora Social Escolar, la Directora Escolar y tres (3) menores de edad que fueron testigos de la situación entre la recurrida y la estudiante afectada. En su testimonio, explicó que los estudiantes corroboraron la versión ofrecida por la menor de edad, a la que la recurrente le indicó, alegadamente de manera humillante, que no exhibiría la bandera que trabajó por haberle quedado "fea" y "horrible" la misma.[9]

Luego, se reunieron Pérez Casiano, la estudiante en cuestión, su madre y la Directora Escolar para dialogar sobre el incidente. Según la testigo, la versión de las tres (3) coincide en que la recurrente se alteró significativamente, y asumió una conducta agresiva. Indicó que la Directora Escolar "con la ayuda de la secretaria es que pudo sacar a la maestra de la oficina porque parecía una loca, desencajada, estaba transformada y que en un momento dado se le acercó a la estudiante y la señalaba con el dedo en la cara y ella pues tuvo que intervenir y separó, verdad, para evitar que pasara algo más".[10]

---

[7] Transcripción de la prueba oral, pág. 29.
[8] *Id.*, págs. 33-35.
[9] *Id.*, pág. 40.
[10] *Id.*, pág. 41.

Por último, la Trabajadora Social testificó sobre el **referido número 10487520**.[11] Indicó que este último es referente a cuatro (4) estudiantes, del taller de cosmetología que Pérez Casiano ofrecía. Según lo que estas estudiantes le narraron a la Trabajadora Social Investigadora, la recurrente les habló agresivamente, movió y tiró cosas de manera inadecuada, utilizó palabras soeces, les gritó y casi le pega a una estudiante con la puerta de un armario. Según las menores de edad, este evento de coraje y agresividad por parte de Pérez Casiano se suscitó como corolario del referido número 10486193.

Según la testigo, una de las estudiantes le expresó que, a su entender, "la maestra se había desquitado con el grupo y que decía gritando que si querían una mala maestra la iban a tener, que se restrelló cajas, tijeras, que tiró sillas, que las movía de mala manera, que casi le daba la puerta de un armario a una estudiante, estaba bien molesta y dice que ella tiró objetos y casi le da a una estudiante con la puerta de un armario, que hizo comentarios de la bandera de otra estudiante, diciendo que la bandera estaba horrible [...]".[12]

Con relación a este referido, la Trabajadora Social Investigadora indicó que la versión ofrecida por las estudiantes fue la misma que le dieron a la Trabajadora Social Escolar, la cual, a su vez, refirió los detalles a la testigo.[13]

Surge de las entrevistas realizadas a los estudiantes afectados y testigos de los eventos, que la mayoría reportó sentir una pluralidad de emociones relacionadas a la recurrente, que varían desde tristeza hasta miedo. En cuanto al estudiante objeto del referido número 10495778, este le indicó a la testigo que "se sentía incómodo, que se sentía preocupado, con temor, inclusive que no

---

[11] Transcripción de la prueba oral, pág. 41.
[12] *Id.*, pág. 43.
[13] *Id.*, pág. 44.

podía dormir y despertaba varias veces en la noche".[14] Además, la Trabajadora Social Investigadora apuntaló en su testimonio que al momento de entrevistar al menor, este se observaba con "los ojos aguados y lloroso", y que el Director Escolar durante el periodo del incidente, le indicó que "también pudo notar al menor visiblemente afectado [...]".[15] Añadió que la madre del estudiante le indicó que "su hijo se vio afectado emocionalmente y fue ubicado con otra maestra de Historia en la escuela".[16] Otra de las menores entrevistadas con relación al referido número 10487520, le indicó a la testigo que "se sentía triste, mal, con miedo [...]".[17]

Ahora bien, la agencia recurrida tuvo la oportunidad de escuchar y evaluar el testimonio de Pérez Casiano. Esta negó la mayoría de las alegaciones. Además, durante la vista se ofreció prueba a través de la recurrente y la Trabajadora Social Investigadora, sobre el cariño y apoyo de algunos estudiantes hacia Pérez Casiano. Incluso, una de las menores entrevistadas para el referido número 10487520 indicó que la recurrente "no controla sus emociones", pero "aun así, la cataloga como una buena maestra".[18]

En esencia, la recurrente sostuvo durante el proceso administrativo, y ahora ante esta Curia, que es una maestra con más de dos (2) décadas de experiencia que nunca ha tenido una querella en su contra. Arguye que siempre se ha desempeñado con profesionalismo y a la altura de la profesión. Sin embargo, señalamos la dicotomía entre las querellas que pesan en contra de Pérez Casiano, y el percibido apoyo de estudiantes que, incluso, corroboran las alegaciones de los referidos. Somos de la opinión que ambas cosas no son mutuamente excluyentes. Si bien es cierto que Pérez Casiano ha tenido una carrera exitosa en la docencia, los

---

[14] Transcripción de la prueba oral, pág, 29.
[15] *Id.*, pág. 31.
[16] *Id.*, pág. 34.
[17] *Id.*, pág. 43.
[18] *Id.*

eventos acaecidos durante los años 2023 y 2024 nos deben dar pausa.

Por otro lado, con respecto al Manual, *supra*, reseñado en el acápite anterior, este nos ilustra especificando que "[e]l maltrato emocional puede consistir en el uso constante de palabras obscenas o vulgares, apodos despectivos, insultos, amenazas, degradar o ridiculizar al menor atacando su auto-imagen y valor propio, agravándose esto cuando es en público".

No albergamos duda- la prueba desfilada en la vista sostiene los elementos que, según el Manual, *supra*, configuran el Maltrato Emocional, en el contexto institucional. La investigación del Departamento de la Familia, el cual recoge el testimonio directo y corroborado de los eventos y las repercusiones del mismo, apuntan a que los menores emocionalmente se afectaron negativamente.

En el contexto de los referidos números 10486193 y 10495778, los estudiantes afectados fueron ridiculizados y degradados en público. Con relación al referido número 10487520, las estudiantes afectadas fueron objeto de palabras soeces y vulgares y sometidas a un ambiente hostil y negativo en el salón de clases.

Concluimos que la recurrente no nos ha colocado en posición para revocar el dictamen de la Junta Adjudicativa. Guiados por el principio rector, al que nos adherimos, de adjudicar controversias relacionadas con menores, priorizando el bienestar y los mejores intereses de éstos, entendemos que la agencia recurrida hizo lo correcto al confirmar los hallazgos "Con Fundamento" del Departamento de la Familia.

## IV.

Por los fundamentos antes expuestos, *confirmamos el dictamen recurrido.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones